FALMOUTH NATIONAL BANK *vs.* CAPE COD SHIP CANAL
COMPANY & others.

Suffolk.    December 5, 12, 1895. — September 21, 1896.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Corporation — Rights of Debenture Bondholders — Equity — Acceptance of Statute — Subrogation — Trust Indenture — Equitable Lien — Appointment of Receiver — Retention of Suit for Entry of Judgment.*

The fact that a person holds debenture bonds purporting to be the promises of A., who has subscribed for all the stock of a corporation with which' he has a contract for the construction of a canal, does not constitute him a creditor of the corporation, which has signed them only "as authorizing the aforesaid pledge of collateral," referring to certain collateral security described therein.

Whether the allegation in a bill in equity, by the holder of debenture bonds issued under statutory authority and in accordance with the terms of a contract between a corporation authorized by the statute to build a canal and A. for the construction of the canal, against the corporation and A., who has subscribed for all the stock of the corporation, that "the plaintiff further, on information and belief, says that said corporation, as thus controlled by said A. in the exercise of his will and power, accepted all the provisions of said act," meaning a statute which provides that the corporation shall, on or before a day named, pay upon presentation the principal and interest of the bonds to the holders thereof, is sufficient to establish an acceptance of the statute by the corporation, if that is necessary, *quære.*

If a statute which authorizes a corporation to build a canal also provides that, before the work of construction is begun, a certain sum shall be deposited by the corporation with the Treasurer of the Commonwealth as security for the performance of its obligations, and for the payment of damages occasioned by, and of claims for labor furnished in, such construction, the holder of debenture bonds, issued under authority of the statute and in accordance with the terms of a contract between the corporation and A. for the construction of the canal, shows no right to reach such sum, by way of subrogation to A., under a bill in equity against the corporation and A., alleging, in substance, that a large amount of the bonds were disposed of, and either in themselves or by their proceeds applied for the purposes of the contract, and in satisfaction or on account of such labor, land, and other property and materials as a part of and

for the use of the canal as would constitute liens on the sum in question, but not averring that the proceeds of the bonds generally, or of those in suit, went to pay land damages or other claims, the payment of which was secured by such sum.

If the parties to a contract for the construction of a canal authorized by statute adopt a scheme to secure the holders of debenture bonds issued under the authority of the statute and in accordance with the terms of the contract, this court cannot substitute another method for that so selected.

A corporation was authorized by statute to build a canal, and made a contract for its construction with A., who subscribed for all the stock of the corporation. Debenture bonds were issued by A., with the assent of the corporation, reciting that they were secured by the deposit as collateral of scrip certificates issued by the corporation convertible into first mortgage bonds with a trustee, and by an assignment of A.'s contract and stock subscription, " controlling all said company's franchises and securities." At the same time A. executed an indenture of trust, assented to by the corporation, by which he assigned to the trustee his contract and stock subscription as security for the debenture bonds, and also pledged to the trustee the scrip certificates as further security. *Held*, on a bill in equity by a bondholder against the corporation, A., and the trustee, that the debenture bonds did not constitute an equitable lien on the property and assets of the corporation.

Where a trust indenture or mortgage executed by A., who had a contract with a corporation for the construction of a canal, under which he subscribed for all the stock of the corporation, provides that the right of action under the instrument is vested exclusively in the trustee, and that no holder of debenture bonds issued under the authority of the statute, or of scrip certificates issued by the corporation, shall have the right to institute any proceeding under it, except in case of the refusal of the trustee to do its duty, and that the trustee shall be under no obligation to institute any suit or proceeding until it shall have been indemnified to its satisfaction for expenses and costs, and against claims for damages, a bill in equity by a bondholder against the corporation, A., and the trustee, alleging that the trustee has been requested to institute proceedings but has refused, and admitting that no indemnity has been offered, cannot be maintained for a foreclosure of the mortgage, if no sufficient reason appears to justify a suit by bondholders in their own names ; and the fact that the trustee is a non-resident cannot avail.

In order to justify the appointment of a receiver of a corporation on the application of a creditor, it should at least appear that he has a valid claim against the corporation, that there are assets applicable to its payment, and that he has exhausted his legal remedies, or that the circumstances are such that to deny the application would lead to a wasting and loss of property, which otherwise might be made available for the payment of the debts of the corporation, and which could not be availed of in any other manner so satisfactorily as by such appointment.

The facts that a corporation is insolvent, that its affairs are in inextricable confusion, and that it has preferred certain creditors, do not necessarily require the appointment of a receiver.

Where a bill in equity, by the holder of debenture bonds issued under statutory authority, and in accordance with the terms of a contract between a corporation authorized by the statute to build a canal and A. for its construction, cannot be maintained to reach, by subrogation to A., a sum deposited as security for the payment of claims, or to enforce an equitable lien on the property of the cor-

poration, or to foreclose a trust mortgage executed by the parties, or to obtain the appointment of a receiver, the bill will not be retained merely for the entry of judgment against A. or the corporation, or both, each of whom is insolvent.

BILL IN EQUITY, filed June 25, 1894, in behalf of the plaintiff and of all other holders of certain bonds, against the Cape Cod Ship Canal Company, a corporation, Frederic A. Lockwood, Thomas L. Livermore, Quincy A. Shaw, the Farmers' Loan and Trust Company, a corporation, and Henry M. Phillips, Treasurer of the Commonwealth.

The bill alleged that the plaintiff was the holder of "certain negotiable coupon bonds known as the Cape Cod Ship Canal Construction Debentures," of the aggregate par value of $5,000, with interest coupons attached; that the Cape Cod Ship Canal Company was a corporation organized under St. 1883, c. 259, with authority to locate, construct, and operate a ship canal, together with wharves, docks, and other necessary structures, the same to be completed within four years from the passage of the act, namely, June 26, 1883; that by the terms of the statute it was provided that the corporation could locate, but should not begin to construct the canal, or take any land or property therefor, until it had deposited $200,000 with the Treasurer of the Commonwealth as security for the performance of all the obligations imposed by the act, and for the payment of all damages occasioned by the laying out, construction, and maintenance of the canal, or by taking any land or materials therefor, and also of all claims for labor performed or furnished in the construction of the canal; that on October 8, 1883, the corporation entered into a contract with the defendant Lockwood, by which he agreed to construct and complete the canal, together with certain breakwaters and other structures appurtenant thereto, within the time limited therefor by the charter; that on or about October 19, 1883, Lockwood, in pursuance of the contract, subscribed for fifty thousand shares, the entire capital stock authorized to be issued by the corporation; that on or about October 10, 1883, the corporation deposited with the Treasurer of the Commonwealth bonds of the United States of the par value of $200,000, which he accepted as a compliance with the provisions of the statute, and the bonds, together with

certain interest and accumulations thereon, were in his possession as such Treasurer; that the corporation, or Lockwood in its behalf, performed all conditions precedent to its right to locate, construct, and complete the canal, except as thereinafter set forth; that the corporation, acting under its charter, laid out and located its canal, and duly filed with the county commissioners the location thereof; that by St. 1884, c. 274, § 8, the charter, organization, and location of the corporation were ratified and affirmed, and it was provided that the contract with Lockwood should not be altered or annulled, except with the approval of the board of harbor and land commissioners, and the acceptance of the act was duly certified to the Treasurer of the Commonwealth by the president of the corporation; that on September 10, 1886, the corporation entered into a further contract with Lockwood, for the construction of the approaches to the canal; that Lockwood, under the two contracts, performed and furnished much labor and expended large sums of money in the prosecution of the enterprise, and in the acquisition of land and other property and materials appurtenant to and as a part of and for the use of the canal; that by St. 1887, c. 222, § 4, it was provided that the deposit of $200,000 should be repaid by the Treasurer of the Commonwealth to the corporation upon the performance of certain conditions precedent, including the filing of a certificate from the county commissioners that all land damage claims against the corporation had been paid; that on September 1, 1887, Lockwood, for the purpose of meeting certain obligations and indebtedness incurred by him in the construction and equipment of the canal, entered into a certain indenture of trust with the Farmers' Loan and Trust Company, by the terms of which he assigned to that corporation his contracts with the Cape Cod Ship Canal Company, his stock subscription, " and all his rights, titles, and interest in and to and under the same "; that the president and treasurer, being duly authorized by the stockholders and board of directors of the canal company in its behalf, duly executed the indenture of trust for the purpose of assenting thereto, and to the pledging as collateral of the scrip certificates of the canal company thereafter described; that the scrip certificates above referred to were certain certificates of bond scrip of the canal company, in the denomination of $1,000

each, whereby the canal company promised that, upon presentation of such certificates at the office of the Farmers' Loan and Trust Company in New York City, the canal company would give in exchange therefor its first mortgage twenty years coupon bonds for the amount of the certificates so presented ; that the certificates were issued by the canal company to the amount in the aggregate of five million dollars, and the same were delivered to Lockwood, who pledged them in trust with the Farmers' Loan and Trust Company as further security for the construction debentures before referred to, and in pursuance of the terms of the indenture ; that such issue and pledge of the scrip certificates was authorized by a vote duly passed at a meeting of the stockholders of the canal company at which Lockwood, purporting to be sole stockholder of the company, voted on five thousand shares of the stock, and by a vote of the board of directors of the company at a meeting duly called and holden ; that the five millions par value of scrip certificates were still held by the Farmers' Loan and Trust Company under the trust; and that the construction debentures were in the following form :

" Know all men by these presents that Frederic A. Lockwood, having contracts with the Cape Cod Ship Canal Company, and a stock subscription controlling all its franchises and securities, hereby acknowledges himself indebted to the bearer hereof in the sum of One Thousand Dollars, which sum said Lockwood promises to pay to the bearer, . . . and said Lockwood further promises to pay to the bearer interest on said sum . . . at the rate of six per cent per annum payable semiannually, . . . both principal and interest being payable in gold coin of the United States of America at the office of the Farmers' Loan and Trust Company, trustee, in New York City.    This debenture is . . . secured principal and interest by the deposit as collateral in trust with the Farmers' Loan and Trust Company, trustee, in New York City, of Five Millions of dollars par value of scrip certificates issued by said Canal Company convertible par for par into the first mortgage twenty-year five per cent gold bonds of the Cape Cod Ship Canal Company as soon as said bonds are issued, and is further secured by an assignment of even date as collateral in trust to said Trust Company, trus-

tee of said Lockwood's said contracts and his stock subscription, controlling all said Canal Company's franchises and securities, said assignment of said contracts and said stock subscription all bearing the authorization or indorsement of said Canal Company. . . .

" The said Lockwood reserves the right to withdraw from the said trust at any time the said bonds or scrip convertible into said bonds, or any part of them deposited as collateral as aforesaid, either by returning to the said Trust Company, trustee, for cancellation a *pro rata* amount of said debentures, or by depositing in lieu of the collateral to be so withdrawn a *pro rata* amount of money needed for the redemption of said debentures. . . .

" In witness whereof, I have hereunto set my hand and the Cape Cod Ship Canal Company, as authorizing the aforesaid pledge of collateral, has caused its corporate seal to be hereto affixed and these presents to be executed by its President and Treasurer thereto duly authorized at Boston this first day of Sept., A. D. 1887."

Then followed the signatures of Lockwood and of the corporation by its president and treasurer.

The bill further alleged that Lockwood, in his own behalf, and the president, purporting to act in behalf of the canal company, being duly authorized by the board of directors of the company, on or about September 1, 1887, executed in the manner and for the purposes above set forth, a large number of the construction debentures in the aggregate amount of three millions of dollars, and delivered the same to the Farmers' Loan and Trust Company, trustee; that Lockwood, by reason of the labor performed and furnished, and the expenses incurred, and the property and materials supplied by him for the use of the canal company, and by reason of his contracts, had, on September 1, 1887, already become entitled to a claim for a large amount against the canal company, and to all securities for the payment of the same provided or contemplated in the acts creating the corporation, and in the amendments thereof, and under his contracts with the company; that in entering into the indenture with the Farmers' Loan and Trust Company, and in issuing the construction debentures, and in pledging the scrip certifi-

cates, it was intended, understood, and agreed that all liens and claims, demands, and securities to which Lockwood might be or become actually or ostensibly in any way entitled on account of labor or materials which had already or should thereafter be performed or furnished in the construction of the canal, or for land taken or conveyed for or to the canal company, were thereby conveyed in trust and in pledge to the Farmers' Loan and Trust Company as security for the payment of the construction debentures; that Lockwood or his representatives have never received or been tendered under his contracts any remuneration, either by way of cash payments or by the issue of any stock or bonds of the canal company; that by St. 1891, c. 397, § 34, the charter, organization, and location of the canal company, and the right of Lockwood to the capital stock of the canal company under his contracts, or of his assigns, to vote at the corporate meeting, and to use, exercise, and enjoy all the franchises, powers, and privileges of the canal company, were recognized, ratified, and affirmed, and his contracts for the building of the canal and its approaches were again declared to be unalterable, except in certain particulars, without the approval of the board of harbor and land commissioners, and in § 27 the issuing and pledge of the scrip certificates, the assignment of Lockwood's contracts and stock subscription, and the execution of the trust indenture, were ratified and confirmed; that a large amount of the construction debentures were properly certified to by the trustee, and were withdrawn by Lockwood, and, either in themselves or by their proceeds, were disposed of and applied for the purposes of his contracts and in satisfaction or on account of such claims or acquisitions, and for such labor and materials performed and furnished as were or otherwise should constitute liens and charges upon the property and assets of the corporation, especially including the $200,000 deposited with the Treasurer of the Commonwealth; that on or about December 17, 1888, Samuel Fessenden made his promissory note for $8,000, payable to the plaintiff or order, for a valuable consideration, on February 20, 1889, and procured the note to be discounted by the plaintiff, and received the discount proceeds thereof; that Fessenden, at the time of such discount, deposited with the plaintiff, together with certain other collaterals, five of the construction debentures

issued by Lockwood, as security for the payment of the note; that the note was dishonored at maturity, and no part of the same had been paid, except one thousand dollars; that the plaintiff had used all due diligence, but had been unable to collect anything from any of the collaterals pledged for the payment of the note; that all of the five construction debentures were duly presented to the president of the canal company on July 13, 1889, and payment thereof was demanded; that on July 15, 1889, the day of their maturity, all of the bonds were presented to the treasurer of the canal company, and also to the secretary of the Farmers' Loan and Trust Company, at the office of the last named company in New York City, and payment thereof was demanded of each of those persons; that payment of the bonds being refused, the same were duly protested after each of the three demands, and due notice thereof was given; that the plaintiff continued to hold all of the five bonds as a *bona fide* pledgee for value and without notice; that each of the defendants, the Cape Cod Ship Canal Company and Lockwood, was indebted to the plaintiff in the amount of the face of the bonds, together with interest thereon, including that which was due according to the interest coupons attached; that the plaintiff was entitled by subrogation and otherwise to all the actual and ostensible rights of Lockwood in that behalf, pledged for the payment of the construction debentures, free from all undisclosed defences thereto, if any, as against him, to a preferred claim in common with the other holders of the bonds being in like situation, upon certain of the assets of the canal company, and especially upon the United States bonds deposited with the Treasurer of the Commonwealth; that for a long time there had been a complete default on the part of Lockwood and the canal company in the performance of the obligations and conditions contained in the construction debentures and the indenture of trust and the scrip certificates; that neither the interest nor principal had ever been paid, in whole or in part, on any of the debentures; that the security provided and pledged under the indenture was already apparently inadequate and insufficient for the declared purposes of the trust, and was in danger of being further dissipated and wasted, especially by reason of certain suits and proceedings by creditors of the canal company then

pending; that the canal company was wholly insolvent, and unable to pay its debts or to meet its obligations, as evidenced by the construction debentures, by the indenture, and by the scrip certificates pledged thereunder; that the affairs of the company were in great and inextricable confusion; that there had been a total failure to build and complete the canal within the time limited therefor by the terms of the charter, or by the extensions thereof contained in the subsequent amendments; that by reason of a failure on the part of the company to comply with certain of the conditions imposed by the last of the extensions, namely, St. 1891, c. 397, all rights of the company to exercise its franchises or to go on with its work were terminated and its charter forfeited on or about June 26; or at the latest on or about November 1, 1891; that since that time the corporation had existed only for the purposes of instituting and defending legal proceedings and for the general winding up of its affairs; that Lockwood, for a long time prior to March 22, 1890, was and still continued to be wholly insolvent, and unable to pay his debts; that on that day he purported to execute an assignment of all his right, title, and interest in the contracts with the canal company, and in his stock subscription, and in the bonds which the canal company should be entitled to issue, to the defendant Livermore, in trust for the benefit of one of Lockwood's creditors, the defendant Shaw, and upon further secret or declared trusts for the benefit of the assignor, to the exclusion of all other creditors of Lockwood; that Livermore or Shaw, by reason of the assignment by Lockwood, claimed to be the sole owner of all the property and franchises of the corporation, and to have absolute control over its officers and corporate affairs, and substantially to be the corporation itself, and claimed and pretended to have some preferred claim or lien upon all or a large part of the United States bonds deposited with the Treasurer of the Commonwealth; that the assignment never conveyed or purported to convey to Livermore anything but such rights of Lockwood in the contracts, stock subscription, and bonds of the canal company as still belonged to him after and subject to the pledge of all of the same to the Farmers' Loan and Trust Company, trustee; that complete default having been made in the payment of the indebtedness secured by such pledge,

and the indebtedness being more than sufficient to exhaust all the rights and securities pledged therefor, neither Livermore nor Shaw had any right or interest under the assignment in or to any ownership or control of any of the assets or securities of the corporation, and the same was made and accepted to hinder, delay, and defraud the plaintiff, and was null and void; that no title in or to, or lien upon, the actual property and assets of the canal company, substantially all of which were within this Commonwealth, had ever so vested in the Farmers' Loan and Trust Company as to make that corporation a necessary party to any action or decree for the disposition of the property and assets, or as to limit the rights and remedies of the plaintiff to such as were provided in the indenture, and to be pursued by the trustee in accordance with the terms thereof, or at least did not require that the Farmers' Loan and Trust Company should be the sole party plaintiff, and as such have control of such proceeding; that the Farmers' Loan and Trust Company, notwithstanding the defaults above named, had, on the request of the debenture bondholders, expressly refused to institute proceedings for their benefit and protection as contemplated, unless it should be fully indemnified therefor; that, being a non-resident and not within the jurisdiction of this court, the supervision and direction of the proceedings by the Farmers' Loan and Trust Company would be alike inconvenient and expensive, and the holdings of bonds by the plaintiff was comparatively small, so that the undertaking of the indemnity required would be a great and disproportionate burden upon the plaintiff; that, though ignorant as to the amount of the construction debentures outstanding, or the exact holdings thereof, the plaintiff had had communication with nearly all of the same, which the plaintiff had any reason to believe were held by parties entitled to the benefit thereof, none of whom desired the intervention of the Farmers' Loan and Trust Company for the protection of their interests, unless the same should be necessary, and all of whom had been deterred from undertaking to indemnify the company for the same reasons which controlled the plaintiff in that respect, and substantially all of whom had expressed a willingness to join in this suit; and that, by the provisions of St. 1891, c. 397, it was con-

templated that debenture bondholders in the situation of the plaintiff might directly and in their own behalf institute proceedings for the purposes set forth in the bill.

The prayer of the bill was, that the plaintiff and all other holders of the construction debentures joining therein, and being in like situation with the plaintiff, might each have judgment in the amounts of the face value of the construction debentures held by each of them respectively, together with interest thereon against each of the defendants, the Cape Cod Ship Canal Company and Lockwood; that it might be decreed that all of the scrip certificates issued and pledged by the canal company, and all of Lockwood's contracts with the canal company, together with his stock subscription and right to the bonds of the company, and any and all benefits, proceeds, damages, and security in any way pertaining thereto or to be derived therefrom should inure to the exclusive benefit of the holders of the construction debentures secured by the indenture of trust, free and discharged from any claim by Livermore or Shaw, or any other person or corporation; that it might be further decreed that the plaintiff and all other holders of the construction debentures in like situation were entitled to preferred claims or liens upon the United States bonds and the income and profits thereof in the possession of the Treasurer of the Commonwealth, to the exclusion of the general creditors of the canal company, and equally and *pro rata* with the other creditors who were specifically secured by the deposit; that any purported assignment to Livermore which might constitute a cloud on the plaintiff's title and rights might be decreed to be null and void against the plaintiff and the other holders of the construction debentures; that a receiver might be appointed to take charge of and hold the estate of the Cape Cod Ship Canal Company, and to collect the debts and property due and belonging to it; that all the defendants might be enjoined from further interfering or meddling therewith; that all the assets and securities of the corporation might be sold by the receiver, and the proceeds thereof distributed among all the creditors of the corporation, so far as necessary for the payment of their claims; and for general relief.

The first contract between the canal company and Lockwood

referred to in the bill provided, in substance, that the company was to locate the canal, to purchase or otherwise take and acquire land and materials necessary therefor, and for the wharves, docks, and other structures required, and to make all expenditures and all deposits of money; that Lockwood was to furnish to the company or reimburse to the company all moneys so required or expended by it, and was to construct the canal within the time allowed and receive therefor $7,500,000; that at the end of each succeeding month after the beginning of the work, the company was to pay Lockwood one million dollars for each mile of canal constructed during the month, and at the same rate for any portion of a mile, less only ten per cent to be retained by the company as security for the faithful performance of the entire contract; that for the purpose of meeting its payments the company was from time to time, as required, to issue capital stock to the full amount authorized by its charter; that the stock as issued was to be subscribed for by Lockwood, and the amounts due on account of the subscriptions to the capital stock were to be offset against the amounts due from the company under the contract; that to meet further payments the company was to issue bonds, not to exceed in any event $5,000,000, payable in twenty years with interest at the rate of six per cent per annum, secured by mortgage to trustees of all its property, including its franchise, and by a sinking fund, if the company should so determine, and to be issued in all respects conformably to the provisions of § 20 of its charter; that Lockwood was authorized to purchase these bonds and offset the amount of the purchase against the amount due from the company under the contract; and that Lockwood was to indemnify the company against all claims for damages to persons or property occasioned by the work to be performed under the contract, or by the acts and defaults of himself or of his employees.

The second contract between the corporation and Lockwood referred to in the bill provided that the corporation should purchase or otherwise take and acquire all land and materials necessary for making or securing the approaches to the canal and the breakwaters, wharves, docks, and other structures; and that it should make all expenditures, and give such security as might be required by law or the terms of its charter; and contained

provisions similar to those in the first contract relating to the furnishing or reimbursing by Lockwood to the corporation all moneys required or expended by it, to the issuing of bonds, and to the indemnification by Lockwood of the corporation against claims for damages.

The indenture of trust referred to in the bill recited that the assignment by Lockwood to the Farmers' Loan and Trust Company was made " as collateral first to said construction debentures, and as collateral second to said scrip certificates, and as collateral third to all his obligations and each of them as evidenced and required by the said [first] contract " ; and that " the said Trust Company, trustee, hereby acknowledges the receipt in trust under this indenture from said Lockwood of the three millions par value of construction debentures and the five millions par value of scrip certificates collateral to said debentures hereinbefore mentioned and described ; and the said Trust Company, trustee, shall pay out said debentures and the proceeds thereof, and said scrip certificates and the proceeds thereof, and all other securities of said Canal Company and the proceeds thereof, it now receives or shall hereafter receive in trust under this indenture, in the sums and at the times and upon the conditions and to the parties hereinbelow specified."

It also contained the following provision : " The right of action under this indenture is vested exclusively in the said Trust Company, trustee, and under no circumstances shall any debenture holder or any number of debenture holders, or any certificate holder or any number of certificate holders have any right to institute an action or other proceeding on or under this indenture for the purpose of enforcing any remedy herein and hereby provided, except in case of refusal on the part of the said Trust Company, trustee, to perform any duty imposed on it by this agreement; and all actions and proceedings for the purpose of enforcing the provisions of this indenture shall be instituted and conducted by the said Trust Company, trustee, according to its sound discretion ; but the said Trust Company, trustee, shall be under no obligation to institute any such suit or to take any proceedings under this indenture until it shall be indemnified to its satisfaction for all expenses and costs of every kind, and also for all possible claims for damages."

After the execution by Lockwood and the trust company of the instrument was the following, signed in the name of the corporation by its president and treasurer: "The Cape Cod Ship Canal Company hereby assents to the foregoing indenture, to the pledging as collateral of its scrip certificates convertible into bonds, and to the assignment as collateral of said stock subscription and of its contracts with said Lockwood."

An amendment to the bill, after alleging that, by legislation and by his contracts, the control of the affairs of the corporation was vested solely in Lockwood, contained the following averment: "And the plaintiff further, on information and belief, says that said corporation, as thus controlled by said Lockwood in the exercise of his will and power, accepted all the provisions of said act," referring to St. 1891, c. 397.

The defendants demurred to the bill for want of equity. At the hearing, a decree was entered sustaining the demurrer, and dismissing the bill; and the plaintiff appealed to the full court.

*J. C. Coombs & C. H. Hanson,* for the plaintiff.

*G. Putnam,* for the defendants.

MORTON, J.   The question raised by the demurrer is whether the plaintiff is entitled to the relief which it seeks. It bases its right to relief on the fact that it is the holder, in good faith and for value, of certain construction debenture bonds which are past due, and it seeks on its own behalf and that of other like bondholders directly to reach and apply the $200,000 deposited with the State Treasurer, which seems to be the only tangible asset belonging to the canal company, either by way of subrogation to Lockwood, or by way of an equitable lien or mortgage on the property and assets of the canal company. Incidentally, the appointment of a receiver is also sought for.

The first question is, whether the fact that the plaintiff is the holder of the bonds constitutes it a creditor of the canal company. The bonds are the promises of Lockwood, and are not indorsed or guaranteed by the company. They are signed by it "as authorizing the aforesaid pledge of collateral," referring to certain collateral described in the bonds; but manifestly this form of signing does not bind the canal company to pay the bonds. The plaintiff does not .indeed contend that the tenor of the bonds is such as to render the canal company liable as a

promisor or guarantor, but it insists that St. 1891, c. 397, § 36,* binds the company to pay, either by its own force or because of the promise implied from its acceptance by the canal company, and that it or any other holder of such bonds who comes within the terms of the act may maintain an action against the company to enforce the liability thus created.

The only allegation in the bill of an acceptance of the act is as follows: "And the plaintiff further, on information and belief, says that said corporation, as thus controlled by said Lockwood in the exercise of his will and power, accepted all the provisions of said act." Meaning by " said act," as previously appears, St. 1891, c. 397. No action on the part of the officers or directors of the company is alleged, and none on that of the corporation except as controlled by Lockwood through his subscription to the capital stock and his contracts with it; in other words, as controlled by a subscriber to the entire capital stock, and by a contractor.

We doubt the sufficiency of such an averment to establish an acceptance of the act by the corporation, if that was necessary. But assuming either that an acceptance of the act was necessary, and that it sufficiently appears that it was accepted, or that the act operated to create a liability on the part of the canal company *ex proprio vigore*, and also assuming that an action may be maintained directly against the canal company by a bondholder on the promise thus implied or the obligation thus created, and that the plaintiff comes within the terms of § 36, we then come to the question whether the plaintiff is entitled to the relief which it seeks.

We see no ground on which the right of subrogation can be

---

* This section is as follows : " Said Cape Cod Ship Canal Company shall, on or before the fifteenth day of July, in the year eighteen hundred and ninety-two, upon presentation, pay to the *bona fide* holders or purchasers for value of the following described debentures: the principal and accrued interest of such of the debentures of Frederic A. Lockwood, contractor, approved by the Cape Cod Ship Canal Company, and known as the Cape Cod Ship Canal construction debentures, as have been withdrawn from the Farmers' Loan and Trust Company, trustee, in New York City, under the provisions of a certain indenture made by and between said Frederic A. Lockwood, said Cape Cod Ship Canal Company, and said Farmers' Loan and Trust Company, trustee, in New York City, and are now, or may hereafter be, in the hands and possession of such *bona fide* holders or purchasers for value."

maintained.   There is no averment in the bill that the proceeds of the debenture bonds generally, or of the bonds in suit, went to pay land damages, or other claims whose payment was secured by the funds deposited with the State Treasurer.

The averment is, in substance, that a large amount of the construction debentures were disposed of, and either in themselves or by their proceeds applied for the purposes of the contracts of Lockwood, and in satisfaction of or on account of such labor, land, and other property and materials as a part of and for the use of the canal as would constitute liens on said $200,000. This amounts to little if anything more than would have been the case if the allegation had been that Lockwood procured his promissory notes to be discounted, and applied a large amount of the proceeds to the purchase of property and the satisfaction of demands which would have constituted liens on the fund. Clearly there would have been in such a case no right of subrogation on the part of the lenders, either as a class or in any particular case or cases.   The fact that the transaction was a little more complicated than the one which we have mentioned, and that the bonds were secured by collateral consisting of scrip certificates issued by the company, and of Lockwood's contracts and of his subscription for the stock, and that the company had assented to the transfer of these as security, does not, it seems to us, give the plaintiff a right of subrogation, even if by any stretch of construction we could interpret the bill as alleging that the proceeds of the bonds in suit had been applied generally or in any particular case to the payment of land damages, or in satisfaction of claims which would be entitled to a lien on the $200,000.   Moreover, Lockwood's contracts with the canal company bound him to complete the canal, and the wharves, approaches, etc., and to pay all damages against it, and to reimburse it for any payments which it had made or might be required to make, and, in short, to satisfy and extinguish the very claims to which the plaintiff asserts a right of subrogation through him, and which, for aught that appears, were paid and extinguished by him.

The plaintiff relies most strongly on its contention that the debenture bonds constitute an equitable lien or mortgage on the property and assets of the canal company.   It argues that it is

evident from the trust indenture or mortgage, and from the bonds themselves, that it was the intention of the canal company and of Lockwood that the property and assets of the company should be security for the payment of such of the bonds as should be issued in accordance with the terms of the mortgage. The first and most obvious reply to this, though perhaps not a conclusive one, is that it would have been easy for the canal company to have mortgaged or created a lien upon its property and assets in favor of such bondholders if it had desired to do so. If it is objected that under the statute the canal company could not do this, then the plaintiff is asking us to compel the canal company to do indirectly what it could not do directly. But the conclusive answer is that the scheme adopted by the parties was a different one, and we cannot substitute another for that which they selected. There was no promise or agreement on the part of the canal company or of Lockwood that the debenture bondholders should have security on the property and assets of the company. Lockwood contracted with the company for the entire undertaking, and subscribed for the entire capital stock. Stock was to be issued to him in payment of what might become due him from the company, and bonds were also to be issued to him in further payment, so far as lawfully could be done by the company. But the statute provided that bonds could not be issued by the canal company except as and to the extent that capital stock was paid in. St. 1883, c. 259, § 20. To avoid the difficulty thus arising, the company issued to Lockwood scrip certificates convertible into first mortgage bonds, and Lockwood, with the assent of the company, assigned to the Loan and Trust Company the scrip certificates, his contracts with the canal company, and his subscription to its capital stock as security for such of the debenture construction bonds deposited by him with the Loan and Trust Company as should be issued by it in accordance with the trust indenture or mortgage.

This was the method adopted to secure the holders of construction debenture bonds. By it the Loan and Trust Company, with the assent of the canal company, became the assignee of Lockwood's contracts with it, and of his stock subscription, with all the rights to and control over the franchises, property, and

securities of the canal company which they gave; and we think that it is plain that it was intended to secure the debenture holders in the manner thus provided, and in no other.   The plaintiff contends that the intention and agreement on the part of the canal company to subject its property and assets to a lien or mortgage in favor of the debenture holders are to be found first in the fact that the scrip certificates by which they are in part secured are convertible into first mortgage bonds, and secondly, because the bonds refer to the contracts and stock subscription, not as contracts and a stock subscription merely, but as " controlling all said Canal Company's franchises and securities."   But we think that the phrase last quoted is a description by Lockwood of the security which he assigned to the Loan and Trust Company, rather than an agreement on the part of the canal company that its property and assets were subject to a lien in favor of the debenture bondholders; and it seems to us that it cannot be held that, because by the agreement of the canal company the scrip certificates were convertible into first mortgage bonds, therefore the debenture bondholders had a lien on its property and assets.   We assume in favor of the plaintiff, without deciding, that, if a party by a written agreement has manifested an intention to create in favor of another a lien or charge on his estate as security for the payment of a debt or obligation, equity will carry out the purpose thus manifested, and enforce the security; *Pinch* v. *Anthony,* 8 Allen, 536; but, for the reasons given, we do not think that the principle applies to this case.

There is a prayer for general relief, and from some allegations in the bill we are not entirely clear whether the plaintiff does not also seek on behalf of itself and other bondholders for a foreclosure of the mortgage.   As a general rule, where property is conveyed to a trustee as security for numerous bondholders, the trustee is the party to initiate or defend suits in respect to the security, and the bondholders have no standing unless he refuses or neglects to perform his duty.   *First National Ins. Co.* v. *Salisbury,* 130 Mass. 303.   Cook, Stock & Stockholders, (3d ed.) § 826, and cases cited.   In this case the trust indenture or mortgage expressly provides that the right of action under it is vested exclusively in the trust company, and that no debenture or cer-

tificate holder shall have a right to institute any proceeding under it except in case of the refusal of the trustee to do its duty, and that the trustee shall be under no obligation to institute any suit or proceeding until it shall have been indemnified to its satisfaction for expenses and costs, and against claims for damages. The bill alleges that the trust company has been requested to institute proceedings, but has refused, and admits in substance that no indemnity has been offered, and assigns as an excuse that it would be a hardship on the bondholders to be obliged to indemnify the trust company, and that they do not desire its intervention. Without undertaking to say that in no case would the claim of the trustee to indemnity be unjustifiable, or that indemnity ought to be furnished in every case, we are of opinion that no sufficient reason appears in this case to justify a suit by the bondholders in their own names to foreclose the mortgage. The fact that the trustee is a non-resident cannot avail, since, in the great majority of cases, it probably would be a non-resident as to some bondholders; and if in any case the hardship would be so extreme as to excuse an offer of indemnity, it does not appear to be so here.

The remaining question relates to the appointment of a receiver. We do not think that the plaintiff makes out a case for one. What has just been said disposes of the application so far as it rests on the ground that the plaintiff is a bondholder secured by mortgage, and seeks the appointment of a receiver to foreclose the mortgage. It does not appear that the trustee will not act if properly indemnified. Though the charter may have expired by limitation, the corporation has not been dissolved, and cannot be in this proceeding, (*Briggs* v. *Cape Cod Ship Canal Co.* 137 Mass. 71,) and a receiver cannot be appointed, therefore, under Pub. Sts. c. 105, § 42. Generally, the appointment of a receiver rests in the sound discretion of the court. But in order to justify the appointment of one on the application of a creditor, it should at least appear that he has a valid claim against the corporation, that there are assets applicable to its payment, and that he has exhausted his legal remedies, or that the circumstances are such that to deny the application would lead to a wasting and loss of property which otherwise might be made available for the payment of the debts of the corporation, and

which could not be availed of in any other manner so satisfactorily as by the appointment of a receiver. A receivership is not to be regarded as an ordinary incident of the proceedings to collect a debt. *Hollins* v. *Brierfield Coal & Iron Co.* 150 U. S. 371. *Parker* v. *Moore*, 3 Edw. Ch. 234. High, Receivers, § 406. Thompson, Corp. §§ 6839, 6848, and cases cited.

We do not think that the facts that a corporation is insolvent, that its affairs are in inextricable confusion, and that it has preferred certain creditors, necessarily require the appointment of a receiver. In such a case the insolvent law of this State affords a complete remedy, and the failure of the parties to avail themselves of it does not of itself furnish a sufficient reason for the appointment of a receiver.

It is manifest that the bill cannot be retained merely for the entry of judgment against Lockwood or the Canal Company, or both. *Andrews* v. *Moen*, 162 Mass. 294.

*Decree affirmed.*