HELEN J. HURLEY *vs.* BOSTON RAILROAD HOLDING
COMPANY.

Suffolk. December 3, 1941, January 4, 1944. — March 1, 1944.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, DOLAN, &
RONAN, JJ.

*Boston Railroad Holding Company. Corporation,* Stockholder, Creditor,
Preferred stock, Dissolution, Receivership, Redemption of stock.
*Equity Jurisdiction,* Lien, Dissolution of corporation, Receivership,
Corporate stock. *Debt. Lien. Receiver. Words,* "Preferred stock,"
"Dividends."

Statute 1910, c. 639, authorizing the issue by the Boston Railroad Hold-
ing Company of preferred stock and defining the rights of the holders
thereof, did not constitute public holders of such preferred stock credi-
tors of the Holding Company with respect either to accrued dividends
thereon or to the par value thereof which § 1 of the statute provided
they should "be entitled" to "in case of a default in the payment of
any stipulated dividend on said preferred stock": their rights were
those of stockholders, preferential and not absolute, in substance a
right to have their stock redeemed in certain circumstances.

General equity jurisdiction does not permit maintenance of a suit in the
Superior Court by a minority holder of preferred stock of the Boston
Railroad Holding Company to enforce the statutory charge and lien
granted by §§ 2, 3, and 4 of St. 1910, c. 639, upon stock of the Boston
and Maine Railroad held by the Holding Company; the exclusive
remedy therefor is by suit in the Supreme Judicial Court under § 4.

In the absence of statutory authority and of facts justifying a receiver-
ship, a suit in equity could not be maintained by a minority holder of
preferred stock of the Boston Railroad Holding Company for the dis-
solution of the corporation and the enforcement of the preferential
rights of the plaintiff "over all other stock of the corporation" upon
its dissolution or liquidation of its affairs.

A receivership of a corporation at the instance of a minority stockholder
is not permitted under general equity jurisdiction in the absence of
facts which would permit a receivership at the instance of a creditor.

The right of holders of preferred stock of the Boston Railroad Holding
Company under St. 1910, c. 639, in substance to have their stock re-
deemed in certain circumstances, cannot be enforced without proof
that such redemption would not render the corporation insolvent.

A suit, in substance to enforce the right of a minority holder of preferred
stock of the Boston Railroad Holding Company for redemption in
certain circumstances, properly was dismissed where it appeared that
the only property of the defendant which could be used for such re-

demption was stock of the Boston and Maine Railroad which, under St. 1909, c. 519, § 3, could not be sold in the absence of express legislative authority and also was subject to the statutory charge and lien under St. 1910, c. 639, §§ 2, 3, 4, for the benefit of all the holders of the preferred stock.

A suit by a preferred stockholder of the Boston Railroad Holding Company against the company could not be maintained under G. L. (Ter. Ed.) c. 214, § 3 (8), to reach and apply stock of the Boston and Maine Railroad held by the defendant where it did not appear that the plaintiff had any enforceable right against the defendant.

BILL IN EQUITY, filed in the Superior Court on March 25, 1941, and afterwards amended.

A demurrer to the bill as amended was heard by *Swift*, J., and was sustained.

The case was argued at the bar in December, 1941, before *Field*, C.J., *Donahue*, *Dolan*, & *Cox*, JJ., and after the retirement of *Cox*, J., was submitted on briefs to *Lummus*, *Qua*, & *Ronan*, JJ.

*J. G. Crane*, for the plaintiff.

*J. Garfield*, for the defendant.

*J. B. Ely*, by leave of court, submitted a brief as amicus curiae.

FIELD, C.J. This is a suit in equity brought in the Superior Court against Boston Railroad Holding Company, a corporation organized under the laws of the Commonwealth hereinafter referred to as the defendant. The plaintiff alleges in her bill, as amended, that she is the owner of "twenty-five shares of the Public Preferred" stock of the defendant and that the defendant "has defaulted in the payment thereon of dividends since January 10, 1938, and by reason of such default in the payment of dividends" the defendant owes the plaintiff "the amount of the par value of her share[s], to wit: — Twenty-Five Hundred ($2500.00) Dollars, plus accumulated dividends thereon, down to the date of any decree herein." The plaintiff alleges that she "brings this suit as an owner of Public Preferred shares of the . . . [defendant], for herself and for such other owners of the Public Preferred shares of the . . . [defendant] as may join this suit as parties plaintiff." No other person, however, has so joined. Other allegations of the bill, as

amended, will be referred to later. The prayers of the bill, as amended, in addition to a prayer for general relief, are: (a) that the court decree that the defendant owes to the plaintiff the sum of $2,500, the par value of the so called public preferred stock of the defendant owned by the plaintiff, "plus the sum of the accumulated and unpaid dividends thereon," (b) that the court reach and apply to the payment of these sums due to the plaintiff from the defendant so much of the shares of stock of any class of the Boston and Maine Railroad owned by the defendant as may be necessary to discharge the obligation of the defendant to the plaintiff, (c) that the court adjudge that the plaintiff or plaintiffs as holders of the public preferred stock of the defendant have as security for payment of the full amount of the par value of their preferred stock and accumulated dividends thereon all stock of the Boston and Maine Railroad "owned by the . . . [defendant]," and (d) that a receiver or receivers be appointed to administer the affairs of the defendant subject to the orders of the court.

The defendant demurred to the bill, as amended, on the ground that the facts contained therein "are insufficient in law and in equity to enable the . . . [plaintiff] to maintain her suit." An interlocutory decree was entered sustaining the demurrer and later a final decree was entered dismissing the bill with costs. From each of these decrees the plaintiff appealed to this court.

The bill, as amended, contains the following allegations — some of which obviously are allegations of law. The authorized and outstanding capital stock of the defendant consists of thirty-one thousand sixty-five shares of common stock, having a par value of $100 per share, and two hundred seventy-two thousand nine hundred thirty-nine shares of preferred stock, having a par value of $100 per share. The voting power of the defendant is vested solely in its common stock. The stipulated dividend on the preferred stock of the defendant is four per cent per annum, payable semiannually, the established dividend dates being January 10 and July 10 of each year, and the "owners of such preferred stock are entitled to be paid such stipulated divi-

dend, but, in the event of the default in the payment of any stipulated dividend from whatever cause, . . . [the defendant] is liable to the owners of its preferred stock to the amount of the par value of their preferred stock and accumulated and unpaid dividends thereon." All the common stock of the defendant is owned by the trustees in bankruptcy of the New York, New Haven and Hartford Railroad Company, hereinafter referred to as the "New Haven." Two hundred forty-seven thousand seven hundred fifty-nine shares of the preferred stock of the defendant are owned by the New Haven. Twenty-four thousand one hundred fifty shares of the preferred stock of the defendant are distributed among and owned by various members of the public. The stock distributed among and owned by various members of the public will be referred to hereinafter as "Public Preferred." "By virtue of a decree of the District Court of the United States of America, for the Southern District of New York, under the date of October 17, 1914, as modified on June 4, 1923, in the case of the United States of America *vs.* New York, New Haven & Hartford Railroad, et als, the Public Preferred is entitled to priority in liquidation over all other Preferred Stock of the . . . [defendant] and a legend to that effect was required to be and was stamped upon the Certificate of . . . [the plaintiff] and all Certificates representing the Public Preferred of the . . . [defendant]." "The payment of the semiannual dividends on the Public Preferred of . . . [the defendant] and, in the event of default by . . . [the defendant] in the payment of said semiannual dividends, the payment of the entire amount of the par value of the Public Preferred and accumulated dividends thereon is required by law to be, and is, guaranteed by the New Haven." Although "formally requested to do so, the New Haven has refused since January 10, 1938, to honor its guarantee of the dividends on the preferred stock of the . . . [defendant]." The assets of the defendant consist entirely of shares of stock of various classes in the Boston and Maine Railroad. The "market value of such assets is entirely inadequate to meet the sums due to the owners of the

Public Preferred for the par value of their preferred stock and accumulated dividends thereon and . . . the . . . [defendant] is therefore grossly insolvent." The defendant "does not now owe any debts which were in existence at the date of the stockholders meeting at which said preferred stock was first authorized." Under "the provisions of law pertaining thereto, in the event of the default by the . . . [defendant] from whatever cause in the payment of any semiannual dividend on the Public Preferred stock of the . . . [defendant], the owners of such Public Preferred stock are entitled to the payment of the par value of the stock owned by them, plus accumulated dividends thereon and . . . the pertinent provisions of law further provide that the Public Preferred stock of the . . . [defendant] to the amount of the par value thereof and all accrued and unpaid dividends thereon, constitute a charge and lien upon, and are secured by, all stock of the Boston & Maine Railroad owned by the . . . [defendant]."

The defendant was organized under St. 1909, c. 519. The preferred stock owned by the plaintiff was issued by the defendant under the authority of St. 1910, c. 639. These two statutes contain the terms and conditions upon which the preferred stock of the defendant was issued and by which the rights of the parties are to be ascertained. These statutes are to be interpreted together and in the light of the prior existing law.

In *Codman* v. *New York, New Haven & Hartford Railroad,* 253 Mass. 144, 149, the court said that the "acquisition of the stock of the Boston and Maine Railroad by the defendant [New York, New Haven and Hartford Railroad] in 1906 was ultra vires the defendant," citing *Attorney General* v. *New York, New Haven & Hartford Railroad,* 198 Mass. 413, a case that arose under St. 1906, c. 463, Part II, § 57, containing the following provision which was a reënactment of the statute that had been in force since 1874 (pages 415–416): "A railroad corporation, unless authorized by the general court or by the provisions of the following five sections, shall not directly or indirectly subscribe for, take or hold the stock or bonds of or guarantee the bonds or divi-

dends of any other corporation." General Laws (Ter. Ed.) c. 160, § 71, originally enacted by St. 1907, c. 585, §§ 1, 2, provides in part that "No corporation owning, leasing or operating a railroad wholly or partly in the commonwealth, nor any person or corporation acting in its interest shall, directly or indirectly, acquire, or attempt to acquire by purchase, exchange of shares, or in any other way, any shares of the capital stock of any domestic railroad company not lawfully leased, owned or operated by it prior to May first, nineteen hundred and seven, except under specific authority provided by law." It may well be that §§ 1 and 2 of said c. 585 were enacted with reference to the ownership of stock in the Boston and Maine Railroad by the New Haven. However, after the passage of St. 1907, c. 585, §§ 1, 2, St. 1909, c. 519, was passed and "constituted in substance and effect specific authority to the . . . [New Haven] to deal with its stock in the Boston and Maine Railroad." *Codman* v. *New York, New Haven & Hartford Railroad*, 253 Mass. 144, 150.

Statute 1909, c. 519, § 1, created a corporation by the name of the Boston Railroad Holding Company "for the sole purpose of acquiring and holding the whole or any part of the capital stock, bonds and other evidences of indebtedness of the Boston and Maine Railroad, and of voting upon all certificates of stock so acquired and held, and of receiving and collecting dividends and interest upon said stock, bonds and other evidences of indebtedness." This chapter provided in § 4 thereof in terms applicable to the New Haven that "Any railroad corporation incorporated at the date of the passage of this act under the laws of this commonwealth may guarantee the principal of and the dividends and interest upon the capital stock, bonds, notes and other evidences of indebtedness of said Boston Railroad Holding Company, and may acquire and hold said stock, bonds, notes and other evidences of indebtedness: *provided, however*, that the shares of stock of said Boston Railroad Holding Company shall not be sold or transferable until said stock has been guaranteed as hereinbefore provided. Any railroad corporation acquiring said stock as hereinbefore provided shall not

thereafter sell the same without the express authority of the legislature." And this section contained a further provision that the Commonwealth might, by act of the Legislature, "take or acquire by purchase or otherwise the stock, bonds, notes and other evidences of indebtedness issued" by the defendant.

Section 3 of said c. 519 is as follows: "The stock of the Boston and Maine Railroad which may be acquired by said Boston Railroad Holding Company shall not be sold by it without express authority from the legislature; and any proposed sale thereof shall be reported to the board of railroad commissioners, who shall investigate and report to the legislature respecting the advisability or expediency of such sale. The bonds, notes or other evidences of indebtedness of the Boston and Maine Railroad which may be acquired by said Boston Railroad Holding Company shall not be sold, transferred, pledged or otherwise disposed of without the approval of the board of railroad commissioners, but this provision shall not be construed so as to impair the rights of creditors of said Boston Railroad Holding Company to secure payment of any indebtedness due them." This statute absolutely prohibited the sale by the defendant, without express authority of the Legislature, of stock of the Boston and Maine Railroad that might be acquired by the defendant. This absolute prohibition was not modified by the provision in said § 3 against impairing the rights of creditors of the defendant for this provision is not applicable to the prohibition of the sale of "stock" of the defendant, but applies only to the limitation upon the disposition of the "bonds, notes, or other evidences of indebtedness of the Boston and Maine Railroad" owned by the defendant. And the existence of the absolute prohibition of the sale, without express authority of the Legislature, of the stock of the Boston and Maine Railroad owned by the defendant is recognized by St. 1910, c. 639 (see § 3), and is modified by that statute (see § 4) only in the case of a statutory proceeding for enforcement of the statutory lien imposed upon the stock of the Boston and Maine Railroad by § 2 of said c. 639.

Statute 1910, c. 639, authorized the defendant to issue "preferred stock." Undoubtedly the issuance of such "preferred stock," including the "preferred stock" held by the plaintiff, created a contractual relation between the defendant and the holders of such "preferred stock." *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 375, and cases cited. The nature of this contractual relation depends upon the terms of the statute authorizing the issuance of such "preferred stock." The defendant could not legally enter into a contractual relation not authorized by this statute and it is not contended that the defendant has done so.

Statute 1910, c. 639, § 1, provides as follows: "The Boston Railroad Holding Company may, by a vote of a majority in interest of its common or general stockholders at a meeting called for that purpose, issue preferred stock, and from time to time increase the amount thereof, divided into shares of the par value of one hundred dollars each: *provided*, that the amount of such issue and of every such increase shall be approved by the board of railroad commissioners. The holders of such preferred stock shall, in preference and priority over all other stock of the corporation, be entitled, upon dissolution of the corporation or in liquidation of its affairs, or in case of a default in the payment of any stipulated dividend on said preferred stock, to payment of the par value thereof and accrued dividends thereon, and shall further be entitled to semiannual dividends, to be paid out of the net profits of the corporation, at a rate to be approved by the board of railroad commissioners, but not to exceed, however, five per cent per annum, which dividends shall be cumulative. Said preferred stock shall not be entitled to participate in any increase or issue of new stock, common or preferred, which may be made by said corporation, shall not have any voting power, shall not be counted with the common stock in questions of majorities and quorum, and shall be subject to such other restrictions, qualifications and limitations and entitled to such other privileges and priorities, not inconsistent with the provisions of this act, as shall be approved by the board of

railroad commissioners on petition of said Boston Railroad Holding Company." The bill, as amended, does not allege that the preferred stock is subject to any such other restrictions, qualifications and limitations or entitled to any such other privileges and priorities. It alleges, however, that "the stipulated dividend on the preferred stock of . . . [the defendant] is four (4%) per cent per annum, payable semiannually."

Sections 2, 3 and 4 of said c. 639 contain provisions relating to a statutory charge and lien upon the stock of the Boston and Maine Railroad at any time held by the defendant. Section 2 provides: "Subject only to the rights of creditors of said Boston Railroad Holding Company existing at the date of the stockholders' meeting at which any of said preferred stock is first authorized, said preferred stock, to the amount thereof at par at any time outstanding, and of all accrued and unpaid dividends thereon, shall be and constitute a charge and lien upon, and be secured by, all stock of the Boston and Maine Railroad at any time held by said Boston Railroad Holding Company." Section 3 authorizes the defendant if "authority to sell the shares of Boston and Maine Railroad, as provided for by section three of chapter five hundred and nineteen of the acts of the year nineteen hundred and nine, shall be granted by the general court" to retire and cancel its preferred shares upon paying the holders thereof compensation determined in a prescribed manner, "but not less than the par value thereof and accrued dividends thereon," and confers jurisdiction upon the Supreme Judicial Court, in connection with proceedings for determination of such compensation, "to authorize the sale of said Boston and Maine Railroad stock free from the lien." Section 4 is as follows: "Subject to the reserved right of the commonwealth, under section four of chapter five hundred and nineteen of the acts of the year nineteen hundred and nine to take or acquire, by purchase or otherwise, the said preferred stock of the Boston Railroad Holding Company, the holders of a majority thereof may, in case of a default in the payment of any semi-annual dividend upon such preferred stock, apply

in person or by attorney to the supreme judicial court for an order for the sale of said Boston and Maine Railroad stock, and said court may make such order as in its discretion justice and equity shall require for the enforcement of the lien of said preferred stock upon said Boston and Maine Railroad stock, and the same shall be sold in accordance with the terms of such order unless prior to such sale the dividend in default, and the amount of any subsequently defaulted dividends, shall be paid by said Boston Railroad Holding Company upon all its outstanding preferred stock; but no decree for a sale shall be made until the court shall be satisfied that the general court has had a sufficient opportunity to determine whether it will exercise the privilege to purchase the securities of the Boston Railroad Holding Company secured to it by section four of said chapter five hundred and nineteen. In case of any such sale, the proceeds thereof shall be applied, after payment of expenses of the sale — first, to the discharge of any claims which existed prior to the date of the meeting at which any of such preferred stock was first authorized; second, to the payment of all accrued and unpaid dividends to which, by the terms of this act, such preferred stock was entitled to the date of said sale; third, to the payment in full, or if said proceeds are insufficient therefor then to the equal pro rata partial payment, of the par value of said preferred stock, and the balance, if any, of the proceeds shall be paid to said Boston Railroad Holding Company."

Section 5 of said c. 639 provides, in terms applicable to the New Haven, as follows: "Any railroad corporation owning any of the common stock of said Boston Railroad Holding Company may acquire, hold, own and sell any of the preferred stock authorized by this act, and may guarantee the payment of the stipulated dividends thereon, and of the par value thereof in case of liquidation or distribution of said Boston Railroad Holding Company, and of any deficiency resulting from a sale under the provisions of the preceding section of this act." The bill, as amended, alleges, as already stated, that the "payment of the semiannual dividends on the Public Preferred of . . . [the defendant]

and, in the event of default by . . . [the defendant] in the payment of said semiannual dividends, the payment of the entire amount of the par value of the Public Preferred and accumulated dividends thereon is required by law to be, and is, guaranteed by the New Haven."

1. The present case must be decided on the basis of the fact alleged in the bill, as amended, that the entire assets of the defendant consist of stock of the Boston and Maine Railroad and in the light of the statutory prohibition of the sale of such stock, without express authority of the Legislature, imposed by St. 1909, c. 519, § 3, modified only by the provision of St. 1910, c. 639, § 4, relating to the enforcement of the statutory lien imposed upon such stock by St. 1910, c. 639, § 2.

2. The fundamental contention of the plaintiff is that she is a creditor of the defendant to the extent of the par value of the preferred stock owned by her and the accrued dividends thereon. She contends that the contractual relation between the defendant and the holders of the "preferred stock" created by the issuance of such "preferred stock" is a debtor and creditor relation so that the defendant is absolutely liable, as if to creditors, under the provisions of § 1 of said c. 639, read in connection with the provisions of that chapter for a statutory charge and lien and for a guarantee by the New Haven, "in case of a default in the payment of any stipulated dividend on said preferred stock," to pay to the holders of such "preferred stock" "the par value thereof and accrued dividends thereon," and that on the allegations of the bill, as amended, such a "default" has occurred.

The contention that the plaintiff is a creditor of the defendant cannot be sustained. She is a stockholder of the defendant, having, as such stockholder, certain defined preferences, together with certain security.

(a) In construing St. 1910, c. 639, § 1, authorizing the defendant to issue "preferred stock" these words are to be "construed according to the common and approved usage of the language; but technical words and phrases and such others as may have acquired a peculiar and appropriate

meaning in law shall be construed and understood according to such meaning" unless such a construction would be "inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute." G. L. (Ter. Ed.) c. 4, § 6. There can be no doubt that the words "preferred stock" "according to the common and approved usage of the language," or according to any "peculiar and appropriate meaning" that they may have "acquired . . . in law," import that the holders of "preferred stock" are stockholders of the issuing corporation, and not creditors thereof. See *Williston* v. *Michigan Southern & Northern Indiana Railroad*, 13 Allen, 400, 405; *Field* v. *Lamson & Goodnow Manuf. Co.* 162 Mass. 388, 390; *Boston Safe Deposit & Trust Co.* v. *Adams*, 219 Mass. 175, 177–178; *Lee* v. *Fisk*, 222 Mass. 418, 420–421; *Morse* v. *Boston & Maine Railroad*, 263 Mass. 308, 311; *Joslin* v. *Boston & Maine Railroad*, 274 Mass. 551, 555; *Crocker* v. *Waltham Watch Co., ante*, 397, 403. *Collins* v. *Portland Electric Power Co.* 12 Fed. (2d) 671, 673.

The concept of "preferred stock" as stock of a corporation, the holders of which, though entitled to some preference or preferences over common stockholders, as fixed by the contract between the issuing corporation and the holders, are stockholders of the corporation and not creditors thereof, has long been familiar in this Commonwealth. "Preferences between different classes of stock in domestic corporations are recognized by statute as part of the established policy of the Commonwealth." *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 374. General Laws (Ter. Ed.) c. 155, § 18, applicable to all corporations except railroad and street railway corporations and corporations organized under c. 156, relating to business corporations, provides that every "corporation may issue preferred stock of one or more classes . . . with such preferences and voting powers or restrictions or qualifications thereof as shall be fixed and determined" in a prescribed manner. General Laws (Ter. Ed.) c. 156, § 14, contains a somewhat similar provision, applicable to business corporations, authorizing the creation of "two or more classes of

stock with such preferences, voting powers, restrictions and qualifications thereof as shall be fixed" in a prescribed manner — obviously contemplating the issue of "preferred stock" although these words are not used therein. See also G. L. (Ter. Ed.) c. 160, §§ 43–46, authorizing the issue of "preferred stock" by railroad corporations, and G. L. (Ter. Ed.) c. 161, §§ 32–35, authorizing the issue of "preferred stock" by street railway companies.

Prior, however, to the passage of St. 1902, c. 441, which was applicable to all corporations and in substantially the same terms as the provision of limited application now contained in G. L. (Ter. Ed.) c. 155, § 18, there was no general statute authorizing corporations to issue preferred stock, although some special acts of incorporation conferred such authority in particular instances. See *Page* v. *Whittenton Manuf. Co.* 211 Mass. 424, 426–427. Statute 1903, c. 437, "The business corporation law," repealed St. 1902, c. 441, as applied to corporations subject to the provisions of said c. 437 (see § 95), but contained a provision applicable to business corporations substantially in the terms of G. L. (Ter. Ed.) c. 156, § 14. But for many years there was a general statute — repealed as to business corporations by St. 1903, c. 437, § 95, but see now as to miscellaneous corporations G. L. (Ter. Ed.) c. 158, § 25 — authorizing certain corporations to issue "special stock," and providing that the holders of such stock should "be entitled to receive," and the issuing corporation should be "bound to pay thereon, a fixed half yearly sum or dividend," expressed in the certificates, "not exceeding four per cent." St. 1855, c. 290. Gen. Sts. c. 60, § 12. Pub. Sts. c. 106, § 42. R. L. c. 110, § 36. Under this statute a holder of "special stock" was regarded as a creditor of the corporation to the extent of the dividends that had become payable, but was not regarded as a creditor to the amount of the "special shares." *Allen* v. *Herrick*, 15 Gray, 274, 281–282, 283. See also *Williams* v. *Parker*, 136 Mass. 204, 207; *American Tube Works* v. *Boston Machine Co.* 139 Mass. 5, 9. In the *Williams* case a corporation had been authorized by St. 1855, c. 143, § 1, "to issue preferred stock . . . said company to give its

guaranty that each share of said stock shall receive semi-annual dividends of four dollars on each share," and the court said that the "general legislative policy . . . appears to be that holders of special stock shall be regarded as creditors of the corporation for the dividends guaranteed, which have become payable; and a similar construction must be given to the St. of 1855, c. 143" (page 207). But in the *American Tube Works* case the court said with reference to "special stock": "Preferred stock, as usually understood, is something quite different from this" (page 9).

It is apparent that when, by St. 1910, c. 639, § 1, the Legislature in terms authorized the defendant to issue "preferred stock" and provided that the holders thereof should have certain preferences and priorities "over all other stock of the corporation," the Legislature was acting in accordance with the legislative policy originating in 1902 of authorizing preferences between different classes of stock, without constituting the holders of "preferred stock" creditors of the corporation, rather than in accordance with the previous legislative policy that "holders of special stock shall be regarded as creditors of the corporation for the dividends guaranteed, which have become payable." But even the legislative policy with respect to "special stock" did not extend to rendering holders of such stock creditors of the corporation to the amount of such stock. Except as to dividends and as to an express limitation upon liability for debts of the corporation, the holders of such "special stock" stood in the relation of stockholders to the corporation. *Allen* v. *Herrick*, 15 Gray, 274, 281–283. And the application by *Williams* v. *Parker*, 136 Mass. 204, 207, to a corporation organized under a special statute, of the legislative policy as to "special stock," was made before the legislative policy as to "preferred stock" had been established. It follows that the argument from legislative policy relied upon in the *Williams* case to support the conclusion that the stockholder in that case was a creditor of the corporation to the extent of the guaranteed dividends, does not support the contention of the plaintiff in the present case that she is a creditor of the defendant, but, on the

contrary, the argument from legislative policy is adverse to this contention.

Clearly *Williams* v. *Parker*, 136 Mass. 204, is not authority for the proposition that the plaintiff in the present case is a creditor of the defendant with respect to the par value of the "preferred stock" held by her. And the case is of little, if any, weight in support of the contention that the plaintiff is a creditor of the defendant with respect to dividends, since the language of the statute considered in the *Williams* case was more favorable to such a contention than is the language of the statute involved in the present case, and the argument from legislative policy relied on in that case is not applicable to the present case.

The language of the provision of St. 1910, c. 639, § 1, authorizing the defendant to issue "preferred stock," construed according to its ordinary meaning and in the light of the established policy of the Commonwealth with respect to different classes of stock of the corporation, unless controlled by other language of the statute, shows that the plaintiff is a stockholder and not a creditor of the defendant.

(b) There is nothing in St. 1910, c. 639, § 1 — which authorized the defendant to issue "preferred stock" and expressly fixed certain preferences and priorities of the holders of such stock — that is incompatible with regarding the holders of such "preferred stock" as stockholders of the corporation, and not as creditors thereof, in accordance with the ordinary understanding as to the relation of holders of "preferred stock" to the issuing corporation, or that shows any intention on the part of the Legislature that the issuance of "preferred stock" by the defendant should create a debtor and creditor relation between the defendant and the holders of such "preferred stock."

The preference or priority with respect to dividends — that such holders shall "be entitled to semi-annual dividends, to be paid out of the net profits of the corporation" — is a usual and proper preference to be given to holders of "preferred stock" as those words are commonly understood. See *Page* v. *Whittenton Manuf. Co.* 211 Mass. 424, 427; *Lee* v. *Fisk*, 222 Mass. 418, 420. The fact that this is

a preference as to "dividends, to be paid out of the net profits of the corporation" — which is the sense in which the word "dividends" is ordinarily understood (see *Field v. Lamson & Goodnow Manuf. Co.* 162 Mass. 388, 392–394; *Daley v. People's Building, Loan, & Savings Association,* 172 Mass. 533, 535–536; *Willson v. Laconia Car Co.* 275 Mass. 435, 441–442; *Warren v. King,* 108 U. S. 389, 398, 399) — supports the conclusion that holders of "preferred stock" of the defendant are to be regarded as its stockholders rather than as its creditors.

The preference and priority given to holders of "preferred stock" that they "shall, in preference and priority over all other stock of the corporation, be entitled, upon dissolution of the corporation or in liquidation of its affairs . . . to payment of the par value . . . [of such preferred stock] and accrued dividends thereon" is also a usual and proper preference to be given to holders of "preferred stock," and does not render such holders creditors of the corporation. *Page v. Whittenton Manuf. Co.* 211 Mass. 424, 427. *Lee v. Fisk,* 222 Mass. 418, 420–421.

The only other preference and priority expressly stated in St. 1910, c. 639, § 1, is that holders of the "preferred stock" "shall, in preference and priority over all other stock of the corporation, be entitled . . . in case of a default in the payment of any stipulated dividend on said preferred stock, to payment of the par value thereof and accrued dividends thereon." This preference and priority is grouped in the statute with the preference and priority upon dissolution or liquidation and apparently was regarded by the Legislature as a preference and priority of like nature. It differs from the preference and priority upon dissolution or liquidation only as to the occasion upon which such holders of "preferred stock" become entitled to preference and priority. This right of the holders of "preferred stock" may arise although the corporation is continuing to do business, but the extent thereof is the same as upon dissolution or liquidation — "payment of the par value . . . [of such preferred stock] and accrued dividends thereon." In each instance the right of the holders of the "preferred stock" is

preferential and not absolute.   This preference and priority is, in substance, a right of holders of "preferred stock" to have their stock redeemed.   "Right of redemption has been recognized as a part of a contractual preference in issuing preferred stock."   *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 376.   The existence of such a right, however, does not "operate to create between the corporation and the preferred stockholders the relation of debtor and creditor."   *Lee* v. *Fisk,* 222 Mass. 418, 420–421.   See also *In re Culbertson's,* 54 Fed. (2d) 753; *Mathews* v. *Bradford,* 70 Fed. (2d) 77, 79; *Koeppler* v. *Crocker Chair Co.* 200 Wis. 476, 481.

There is nothing in the bill, as amended, to indicate that the "preferred stock" has any preference and priority other than those expressly stated in St. 1910, c. 639, § 1 — apart at least from the rights of the holders thereof resulting from the statutory charge and lien and from the guarantee of the New Haven, and the rights of such holders upon retirement and cancellation of the "preferred stock," in accordance with said § 3 of the statute, which are considered later in this opinion.   And the express restrictions upon the "preferred stock" stated in said § 1, including the provision that such "stock . . . shall not have any voting power," are not incompatible with the holders of such "preferred stock" being stockholders and not creditors of the defendant.   See *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 374; *Hamlin* v. *Toledo, St. Louis & Kansas City Railroad,* 78 Fed. 664, 671; *Mathews* v. *Bradford,* 70 Fed. (2d) 77, 78–79.   And see G. L. (Ter. Ed.) c. 155, § 18; c. 156, § 14.

(c) Reliance is placed upon the statutory charge and lien imposed by St. 1910, c. 639, § 2, and referred to in the following sections of the statute, as creating a debtor and creditor relation between the defendant and the holders of its "preferred stock."   But the statutory charge and lien does not have this effect.

This statutory charge and lien is not imposed by the statute upon all the property of the defendant.   It is imposed only upon "all stock of the Boston and Maine Railroad

at any time held" by the defendant. The defendant, however, had authority to acquire other property. See St. 1909, c. 519, §§ 1, 3; St. 1903, c. 437, § 4 (f). The nature of the statutory charge and lien, however, is not affected by the fact alleged in the bill, as amended, that the assets of the defendant consist entirely of shares of the Boston and Maine Railroad. Whatever would be the effect of imposing a statutory charge and lien upon all the property of a corporation to secure an issue of "preferred stock" with respect to constituting the holders of such "preferred stock" creditors of the corporation, no such effect can rightly be attributed to a statutory charge and lien upon specified property of the corporation to secure such "preferred stock."

According to the terms of the statute the statutory charge and lien is imposed upon the Boston and Maine Railroad stock to secure "said preferred stock [of the defendant], to the amount thereof . . . and of all accrued . . . dividends thereon." St. 1910, c. 639, § 2. A lien is ordinarily security for a "debt, duty or other obligation." *Arnold* v. *Delano,* 4 Cush. 33, 38. The obligation secured by a charge and lien need not be a "debt." And the imposition of a statutory charge and lien does not import that the obligation secured thereby is a "debt." The obligations secured by the statutory charge and lien imposed by said § 2 are not defined therein more definitely than as "said preferred stock, to the amount thereof . . . and of all accrued . . . dividends thereon." Naturally interpreted this means that the charge and lien is security for the performance of the obligations of the defendant upon such "preferred stock." These obligations are stated in said § 1 of the chapter. They include, with an obligation to pay "semi-annual dividends . . . out of the net profits of the corporation," obligations "upon dissolution of the corporation or in liquidation of its affairs, or in case of a default in the payment of any stipulated dividend on said preferred stock" to pay "the par value thereof and accrued dividends thereon" — obligations, however, that are preferential rather than absolute. The close resemblance between the language of said § 2, imposing the statutory charge and lien, and the language of § 1, fixing the

obligations of the defendant upon the "preferred stock," indicates that it is these obligations of the defendant that are intended to be secured by the statutory charge and lien upon the Boston and Maine Railroad stock. And the same intention is also manifested by the language of § 4 of the chapter providing for enforcement of the statutory charge and lien, which closely resembles the language of § 1 fixing the obligations of the defendant upon its "preferred stock." Said § 4 provides for enforcement of the statutory charge and lien by a proceeding in the Supreme Judicial Court "in case of a default in the payment of any semi-annual dividend upon such preferred stock," and provides that upon a sale of the Boston and Maine Railroad stock upon a decree for such a sale in such a proceeding "the proceeds thereof shall be applied, after payment of expenses of the sale — first, to the discharge of any claims which existed prior to the date of the meeting at which any of such preferred stock was first authorized; second, to the payment of all accrued and unpaid dividends to which, by the terms of this act, such preferred stock was entitled to the date of said sale; third, to the payment in full, or if said proceeds are insufficient therefor then to the equal pro rata partial payment, of the par value of said preferred stock, and the balance, if any, of the proceeds shall be paid to said . . . [defendant]."

The obvious purpose of imposing the statutory charge and lien was to provide holders of "preferred stock" of the defendant with security for the performance of the defendant's obligations upon such "preferred stock" as fixed by § 1 of said c. 639, that, to the extent of the Boston and Maine Railroad stock held by the defendant, would give such holders a more favorable preference or priority than they would have under the provisions of said § 1 — a preference and priority over all persons except "creditors of said . . . [defendant] existing at the date of the stockholders' meeting at which any of said preferred stock is first authorized" (§ 2), rather than a preference or priority "over all other stock of the corporation" (§ 1). This provision for security, and for a more favorable preference to the extent of the Boston and Maine Railroad stock, did not,

however, enlarge the basic obligations of the defendant so secured by transforming the holders of "preferred stock" from stockholders into creditors. The obligations of the defendant upon the "preferred stock" remain the same as if the statutory charge and lien had not been imposed, but by virtue of such statutory charge and lien the holders of such "preferred stock" had an additional means of enforcing these obligations.

While a charge and lien is not an ordinary incident of "preferred stock," a charge and lien imposed by or under authority of statute is not necessarily incompatible with "preferred stock." See *Heller, Hirsch & Co.* v. *National Marine Bank*, 89 Md. 602, 616–617. Doubtless "preferred stock" with such a statutory charge and lien is not ordinary preferred stock. But the purpose declared by the Legislature in St. 1910, c. 639, was to authorize an issue of "preferred stock" and not the creation of a debt. And when such a purpose is declared "the intention to create a debt should be clear and convincing" if such an effect is to be given to the statute and the issue of "preferred stock" thereunder. See *Mathews* v. *Bradford*, 70 Fed. (2d) 77, 78. See also *Warren* v. *King*, 108 U. S. 389, 398. No intention is disclosed by the statute here under consideration that the holders of "preferred stock" of the defendant should be general creditors of the defendant. They are stockholders of the defendant although as to specified property of the defendant their rights as such stockholders are secured by a statutory charge and lien upon this property. But this charge and lien did not render them general creditors of the defendant. The case of *Heller, Hirsch & Co.* v. *National Marine Bank*, 89 Md. 602, is not in conflict with this conclusion. Though, in that case, much was said about the preferred stockholders being creditors of the corporation by reason of a lien upon the franchise and property of the corporation, the result of the decision in that case was to give effect to such lien, but, as to property not covered by the lien, to treat holders of the preferred stock as stockholders and not as creditors.

(d) The provisions of St. 1910, c. 639, § 3, relating to

retirement and cancellation of the preferred shares of the defendant, do not constitute the holders of "preferred stock" of the defendant creditors of the defendant. This section authorizes such retirement and cancellation, only if authority to sell the Boston and Maine Railroad stock of the defendant has been granted by the Legislature. Such authority has not been granted. Moreover, even if such authority were granted, retirement and cancellation of the preferred shares would be optional with the defendant. And only in case of such retirement and cancellation does the statute impose upon the defendant an obligation to pay compensation for such preferred shares as determined in accordance with the provisions of the statute but "not less than the par value thereof and accrued dividends thereon." No such obligation has yet arisen.

(e) The provision of St. 1910, c. 639, § 5, authorizing the New Haven to "guarantee the payment of the stipulated dividends . . . [on the preferred stock of the defendant], and of the par value thereof in case of liquidation or distribution of . . . [the defendant], and of any deficiency resulting from a sale under the provisions of the preceding section of this act," and the actual "guarantee" of the New Haven in accordance with this statutory authority, did not render the holders of "preferred stock" of the defendant creditors of the defendant. It is not necessary to discuss the scope of the "guarantee" of the New Haven. Nor is it necessary to consider whether the obligation of the New Haven is a true guarantee or an obligation of a different nature. It is enough to say that the statutory provision authorizing this "guarantee" does not call for a different construction of the language of the statute fixing the obligations of the defendant upon its "preferred stock" from the construction here given to that language. And the actual "guarantee" of the New Haven in accordance with the statutory provision did not change the obligations of the defendant upon its "preferred stock."

3. The present suit is not brought upon the "guarantee" of the New Haven. The New Haven is not a party defendant. The sole question for decision therefore is whether on

the allegations of the bill, as amended, the suit can be maintained against the Boston Railroad Holding Company, the only defendant to the suit.

4. The plaintiff contends that the present suit can be maintained as a suit under general equity jurisdiction to enforce the statutory charge and lien upon the Boston and Maine Railroad stock held by the defendant. See *Westall* v. *Wood*, 212 Mass. 540. The suit cannot be maintained on this ground.

Obviously this suit is not a statutory proceeding to enforce the statutory charge and lien, such as is authorized by St. 1910, c. 639, § 4. Such a proceeding could be brought only in the Supreme Judicial Court. The present suit was brought in the Superior Court. Furthermore, such a proceeding could be brought only by the "holders of a majority" of the "preferred stock" of the defendant, and, according to the allegations of the bill, as amended, the plaintiff is the holder of only a small minority of such "preferred stock." It is not necessary to consider whether, in other respects, the allegations would be sufficient in such a proceeding.

The governing statute shows that the statutory proceeding was intended to be the exclusive method of enforcing the statutory charge and lien. The situation is within the principle that where a statute creates a right and also prescribes the form of remedy, that form of remedy alone must be pursued. *Cosmopolitan Trust Co.* v. *Cohen*, 244 Mass. 128, 134. The right conferred by the statute is the charge and lien thereby imposed as security for the "preferred stock" of the defendant. But this charge and lien is imposed upon property — Boston and Maine Railroad stock — which, by reason of an express statutory prohibition, cannot be sold without express authority of the Legislature. St. 1909, c. 519, § 3. A charge and lien imposed upon property so restricted obviously would, at best, be of slight value to the persons for whose benefit it was imposed. Consequently, it was natural that, in order to give more value to such charge and lien, some modification should be made of the prohibition of the sale of the property upon which

the charge and lien was imposed. But the statute (St. 1910, c. 639) authorizing the defendant to issue "preferred stock" shows that it was the intention of the Legislature that the prohibition of the sale of the property upon which the charge and lien was imposed should continue in effect except as modified by that statute. The only modification of this prohibition made by that statute is a modification that permits the sale of the Boston and Maine Railroad stock upon a decree in the statutory proceeding for enforcement of this charge and lien. The fact that the statutory prohibition of the sale of the Boston and Maine Railroad stock is modified only to this extent leads to the conclusion that the Legislature intended that the statutory proceeding for enforcement of the charge and lien should be the exclusive remedy for enforcing such charge and lien. In view of the general legislative policy of prohibiting the sale of Boston and Maine Railroad stock held by the defendant, it was not unnatural that the Legislature should modify this prohibition only in case a sale of such stock was sought by the "holders of a majority" of the "preferred stock" of the defendant. It is not to be thought that the Legislature would so limit the statutory proceeding for enforcement of the charge and lien, and leave it open to a minority stockholder to obtain the same or a similar result by resort to a suit under general equity jurisdiction.

5. The present suit can be maintained against the defendant, if at all, only for the purpose of enforcing some preferential right or rights of the plaintiff as a holder of "preferred stock" of the defendant "over all other stock" of the defendant. St. 1910, c. 639, § 1.

6. It is clear, and the plaintiff makes no contention to the contrary, that the present suit cannot be maintained on the allegations of the bill, as amended, to enforce the preferential right of the plaintiff as a holder of "preferred stock" of the defendant "over all other stock of the corporation" "to semi-annual dividends, to be paid out of the net profits of the corporation" at the fixed rate of four per cent per annum. St. 1910, c. 639, § 1. There is no allegation in the bill, as amended, that there are any "net profits of the corporation."

Moreover, even if there were such "net profits," the bill, as amended, does not allege other facts essential to the maintenance of a suit to compel the payment of dividends. *Thomas* v. *Laconia Car Co.* 251 Mass. 529, 535–536. *Morse* v. *Boston & Maine Railroad*, 263 Mass. 308, 310–311. *Joslin* v. *Boston & Maine Railroad*, 274 Mass. 551, 555–558. The cases of *Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass. 1, and *Crocker* v. *Waltham Watch Co.*, *ante*, 397, are readily distinguishable on this point.

7. The present suit cannot be maintained on the allegations of the bill, as amended, for the purpose of enforcing the preferential rights of the plaintiff as a holder of "preferred stock" of the defendant "over all other stock of the corporation" upon dissolution of the corporation or liquidation of its affairs. St. 1910, c. 639, § 1. The corporation has not been dissolved and is not in process of being dissolved, and its affairs are not in process of liquidation.

Moreover, the suit cannot be maintained on the allegations of the bill, as amended, for the dissolution of the defendant or for the winding up of its affairs. Nor can it be maintained for the purpose stated in the special prayer that a receiver or receivers be appointed "to administer the affairs" of the defendant. The plaintiff rests her contention that a receiver or receivers be appointed particularly on the ground that the plaintiff is a creditor of the defendant. The contention, however, cannot be supported on this ground, for, as already pointed out, she is not a creditor of the defendant. Her standing is that of a minority stockholder.

The plaintiff, as a minority stockholder, is not entitled to have the defendant dissolved or its affairs wound up, in this suit. In general, in the absence of legislative authority, the courts have no jurisdiction on the suit of an individual to dissolve a corporation (*Cook* v. *Cook*, 270 Mass. 534, 542), since "'the dissolution of a corporation is a peculiar function which resides primarily in the Legislature and is conferred upon courts only by explicit legislative authority.' *Olds* v. *City Trust, Safe Deposit & Surety Co.* 185 Mass. 500, 505. To decree the final dissolution of a corporation on petition by an individual 'is no part of the general juris-

diction of a court of law or of chancery, and can be justified only by express statute.' *Folger* v. *Columbian Ins. Co.* 99 Mass. 267, 276." *Cook* v. *Cook*, 270 Mass. 534, 542. There is no statute expressly conferring jurisdiction upon the courts to dissolve the defendant upon the suit of a minority stockholder. And it is somewhat significant of the intention of the Legislature in this respect that although St. 1909, c. 519, incorporating the defendant, by § 1 thereof, made the defendant subject to many of the provisions of the business corporation law, St. 1903, c. 437, the defendant was not made subject to the provisions thereof authorizing dissolution of corporations by proceedings in court. §§ 51–55. See now G. L. (Ter. Ed.) c. 155, § 50, as amended, §§ 51, 52, 53, 55. In view of the strict statutory limitations upon the defendant it may well be that the Legislature did not intend that the defendant should be dissolved other than by express legislative action to that end.

But even if, as we do not intimate, there is any exception to the general principle stated in *Cook* v. *Cook*, 270 Mass. 534, 542, relating to the jurisdiction of courts to decree dissolution of a corporation not justified by express statute, clearly there can be no such exception unless the facts are such as would warrant the appointment of a receiver for the purpose of winding up the affairs of the corporation.

On the allegations of the bill, as amended, this suit cannot be maintained for the appointment of a receiver of the defendant. It was intimated in *Cook* v. *Cook*, 270 Mass. 534, 543–544, that in some circumstances a receiver for a corporation might be appointed under general equity jurisdiction, in a suit brought by a stockholder who did not hold a majority of the stock. But in that case it was held that no ground was there shown for the appointment of a receiver. This court, however, referred to certain facts relating to the management of the corporation that were not there shown, although it did not necessarily imply that those facts, if shown, would warrant the appointment of a receiver. But such facts are not alleged in the present bill, as amended. It appeared in the *Cook* case that the business of the corporation there involved was being managed

"honestly, efficiently with profits to all parties" (page 543). It is not alleged in the present bill, as amended, that the defendant is not being so managed, although, as pointed out in another connection, it is not alleged affirmatively that the defendant has any "net profits." Moreover, in the *Cook* case it appeared that the corporation was solvent. It is not alleged in the present bill, as amended, that the defendant is insolvent. It is true that there is such an allegation in form, that is, that "the market value of . . . [the defendant's] assets is entirely inadequate to meet the sums due to the owners of the Public Preferred for the par value of their preferred stock and accumulated dividends thereon and that the . . . [defendant] is therefore grossly insolvent." But in "determining whether a corporation is insolvent, liability to stockholders on capital stock is not taken into account. *Calnan* v. *Guaranty Security Corp.* 271 Mass. 533, 542." *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 377. However, neither the fact that a corporation is not being operated at a profit nor the fact that it is insolvent would be sufficient, in itself, to justify the appointment of a receiver at the suit of a creditor. *Pond* v. *Framingham & Lowell Railroad,* 130 Mass. 194, 195. *Falmouth National Bank* v. *Cape Cod Ship Canal Co.* 166 Mass. 550, 569.

Jurisdiction "to appoint a receiver of a corporation upon the petition of a simple contract creditor cannot be doubted in this Commonwealth. Nevertheless, such appointment rests in sound judicial discretion to be put forth only with circumspection. It should not be exercised except in cases where otherwise there would be wasting and loss of property which ought to be made available for payment of the debts of the corporation and which cannot be conserved in any other way so satisfactorily as by the appointment of a receiver. *Falmouth National Bank* v. *Cape Cod Ship Canal Co.* 166 Mass. 550, 568." *New England Theatres, Inc.* v. *Olympia Theatres, Inc.* 287 Mass. 485, 492. Even if there is general equity jurisdiction to appoint a receiver upon the application of a minority stockholder, such jurisdiction should be exercised only upon a showing of the facts that

must be shown upon an application by a creditor for a receiver or upon a showing of such facts with respect to the management of the corporation as are referred to in *Cook* v. *Cook,* 270 Mass. 534, 543–544, but which did not appear in that case and are not alleged in the present bill, as amended. The bill, as amended, does not allege facts that would entitle a creditor to the appointment of a receiver. "A receivership is not to be regarded as an ordinary incident of the proceedings to collect a debt." *Falmouth National Bank* v. *Cape Cod Ship Canal Co.* 166 Mass. 550, 569. No more is it to be regarded as an ordinary incident of a proceeding to enforce the obligation of the defendant to a holder of its "preferred stock" that does not constitute a debt.

8. The present suit cannot be maintained on the allegations of the bill, as amended, for the purpose of enforcing the preferential right of the plaintiff as a holder of "preferred stock" of the defendant "over all other stock of the corporation," "in case of a default in the payment of any stipulated dividend on said preferred stock, to payment of the par value thereof and accrued dividends thereon." St. 1910, c. 639, § 1.

(a) The bill, as amended, alleges that the defendant "has defaulted in the payment of the semiannual dividends on the preferred stock of the . . . [defendant] due on January 10, 1938, and on every succeeding dividend date thereon since that time." It may well be doubted whether this is an allegation of fact or, in part, at least, an allegation of law. But the allegation is to be construed as meaning, at least, that the defendant has failed to pay a semiannual dividend on each of the stated dividend dates. And we assume in favor of the plaintiff, without deciding, that such failure constituted a "default" within the meaning of the statute, and that consequently the provision for a preferential right "over all other stock of the corporation" has become operative. See *Willson* v. *Laconia Car Co.* 275 Mass. 435, 440–443.

(b) The preferential right, here in question, of the plaintiff as a holder of "preferred stock" of the defendant created

by the issue of such "preferred stock," as already pointed out, is, in substance, a right to have her "preferred stock" redeemed. But on the allegations of the bill, as amended, the plaintiff is not entitled to have her stock redeemed.

It is an implied limitation upon the contract for the redemption of "preferred stock," created by the issuance of such "preferred stock," that such contract for redemption "cannot be enforced if the effect is to render the corporation insolvent." *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 376–377. The existence of this implied limitation is made even more clear than it would be if the agreement to redeem had been in form absolute by the provision that the rights of holders of "preferred stock" to redemption shall be in "preference and priority over all other stock" (St. 1910, c. 639, § 1), importing that these rights of redemption are subordinate to the rights of creditors, although they are secured by a statutory charge and lien, enforceable in a particular manner, that has priority over the rights of all creditors except those existing when the "preferred stock" was first issued. St. 1910, c. 639, § 2. The burden was on the plaintiff to allege and prove that redemption of the "preferred stock" would not render the defendant insolvent. *Koeppler* v. *Crocker Chair Co.* 200 Wis. 476, 482. The situation in this respect differs from that in *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 377, where the suit was brought to enjoin the redemption of preferred stock and consequently the burden was on the plaintiff to allege and prove that the corporation was insolvent, or that the redemption of such preferred stock would render it insolvent. See also *Scriggins* v. *Thomas Dalby Co.* 290 Mass. 414, 420. There is no allegation in the bill, as amended, that the redemption of the "preferred stock" would not render the defendant insolvent.

Moreover, the bill, as amended, not only fails to allege facts showing that the plaintiff is entitled to redemption of the "preferred stock" held by her, but also shows affirmatively that the defendant has no property with which it can redeem the "preferred stock." According to the allegations

of the bill, as amended, the only property of the defendant is stock of the Boston and Maine Railroad. This stock cannot be sold without express legislative authority. St. 1909, c. 519, § 3. Furthermore, all this property is subject to a statutory charge and lien for the benefit of all the holders of "preferred stock" of the defendant — a charge and lien enforceable only in a particular manner — and such property, according to the allegations of the bill, as amended, is worth much less than the par value of the outstanding "preferred stock" and accrued dividends thereon, or even the par value of the outstanding "preferred stock" and accrued dividends thereon owned by various members of the public, and herein referred to as "Public Preferred" stock.

(c) The plaintiff contends that this suit can be maintained as a bill to reach and apply the Boston and Maine Railroad stock held by the defendant under the provisions of G. L. (Ter. Ed.) c. 214, § 3 (8), authorizing suits "to reach and apply shares . . . in corporations organized under the laws of the commonwealth . . . whether the plaintiff is a creditor or not, and whether the suit is founded upon a debt or not." This statute creates no substantive rights. Its function is purely procedural. *McCarthy* v. *Rogers*, 295 Mass. 245, 247. For reasons already stated, the bill, as amended, does not show that the plaintiff has any enforceable right against the defendant. The plaintiff is not a creditor of the defendant. And the bill, as amended, does not allege facts that entitle the plaintiff to have her "preferred stock" redeemed by payment to her of "the par value thereof and accrued dividends thereon." Furthermore, though the scope of said § 3 (8), in some respects, is broader than the scope of § 3 (7) also authorizing suits to reach and apply, under § 3 (8) as under § 3 (7) such a suit can be brought only to reach and apply property that is assignable. See *Bethlehem Fabricators, Inc.* v. *H. D. Watts Co.* 286 Mass. 556, 565. The Boston and Maine Railroad stock that the plaintiff seeks to reach and apply is not assignable for the reason that it cannot be sold without express legislative authority. St. 1909, c. 519, § 3.

It follows that the facts alleged in the bill, as amended, are insufficient to enable the plaintiff to maintain her suit, and that the demurrer on this ground was sustained rightly.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*