LAURENCE ALBRE, JUNIOR, & another *vs.* SINCLAIR CONSTRUCTION COMPANY, INC. & others.

Suffolk. March 7, 1963. — April 4, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Receiver. Equity Jurisdiction,* Receivership. *Corporation,* Receivership, Corporate entity. *Equity Pleading and Practice,* Decree, Appeal.

A decree in equity appointing a receiver of a corporation was appealable as a final decree. [712–713]

The appointment of receivers for two housing corporations having bonded contracts with a construction corporation for the erection of housing on lands of the housing corporations, for which a construction mortgagee advanced money, was justified in the circumstances where it appeared that the suit for the receiverships was brought on behalf of unpaid suppliers of labor and materials furnished to the construction corporation, for which also a receiver was appointed, that disputes had arisen in connection with the projects, that each of the three corporations was insolvent, that they had been controlled by the same individual defendants, that their bookkeeping was confusing, that their assets had been "so intermingled, concealed, and hidden" that such assets could not "be reached . . . to satisfy the claims of the suppliers," and that the receiverships were necessary "to prevent dissipation and concealment of assets"; the receiverships did not involve the necessity of disregarding the corporate entities. [716–717]

BILL IN EQUITY filed in the Superior Court on September 17, 1962.

The suit was heard by *Fairhurst, J.*

*Robert J. Sherer* for Chiswick Arms, Inc. & another.

*Joseph B. Manello* (*Julius Thannhauser & David J. Cohen* with him) for the plaintiffs.

WHITTEMORE, J. The Superior Court, after hearing and before answer, by separate decrees appointed receivers of the property of Chiswick Arms Inc. (Chiswick) and the property of The Regency Arms Inc. (Regency), and Chiswick and Regency have appealed. No evidence is reported and the only question is whether the decrees could have been entered on the allegations of the bill. *Commissioner of Ins.*

*v. Commonwealth Mut. Liab. Ins. Co.* 297 Mass. 219, 220. Each decree imports the finding of every fact necessary to support it. *Ibid. Smith* v. *Wheeler,* 326 Mass. 223, 225.

The decrees were so far final in nature as to be appealable. *New England Theatres, Inc.* v. *Olympia Theatres, Inc.* 287 Mass. 485, 490. See *Lynde* v. *Vose,* 326 Mass. 621, 622–623.

The bill of complaint is brought by assignees (for convenience of suit) of creditors of Sinclair Construction Company, Inc. (Sinclair). It discloses that the plaintiffs' assignors are unpaid suppliers of Sinclair as the contractor on two defaulted building construction projects who rely on special circumstances to give them rights to proceed against the owners, although the assignors are not creditors of the owners.

It is alleged that Sinclair in October, 1961, contracted separately with Chiswick and with Regency to construct for each an F. H. A. housing project. The defendant The Provident Institution for Savings in the Town of Boston (Provident) is the construction mortgagee of each project. The defendant Peerless Insurance Co. (Peerless) is the surety on two bonds on which Sinclair is principal given respectively to Chiswick and Regency, each conditioned on the performance by Sinclair of the construction contract and the full payment of labor and materials furnished pursuant thereto. The plaintiffs' assignors supplied labor or materials to Sinclair. Their unpaid claims total over $361,000.

In July, 1962, Chiswick and Regency declared Sinclair in default under their respective contracts and refused to make further payments. Sinclair denies default and claims $200,000 due for extras and that Chiswick and Regency are in default. Provident advanced approximately $1,875,903 and on September 12, 1962, made entry and intends to engage another contractor to complete the projects. Peerless refuses to pay the suppliers claiming that its first obligations are to Chiswick, Regency, and Provident, and also that Sinclair is not in default.

Provident on July 23, 1962, paid over to the defendant Frederick W. Roche, Esquire, attorney for Chiswick and Regency, $136,512, which is due and owing to the suppliers and which he refuses to pay to them. There is a ten per cent retainage of about $200,000 held by Provident.

The foregoing allegations do not portray an unusual situation. The plaintiffs, however, rely on additional averments: The defendant James S. Turner caused Sinclair to be incorporated and is its sole stockholder, president, and treasurer and the person in charge of its business. Turner also caused Chiswick and Regency to be incorporated and was a stockholder, the president, and a director of each. The defendant Gerald Schuster was an incorporator and stockholder and the treasurer and a director of Chiswick and of Regency. Turner owned the land on which the housing projects were begun and in October, 1961, conveyed to Chiswick and Regency, respectively, for a nominal consideration, the parcel or parcels on which its project stands. Sometime in 1962 the interests of Turner and Schuster in Chiswick and Regency were sold or otherwise transferred to the defendants Lewis Baskin, Charles H. McLaughlin (now officers and directors of each) and Carl Baskin (now a director of each). The "books and records of . . . Turner, Schuster, Sinclair, Chiswick, and Regency, with respect to the two construction projects are such that it is difficult, if not impossible, to determine their true financial condition." Sinclair, Regency, and Chiswick are insolvent in that they are unable to pay their debts as they mature. The "assets of Sinclair, Chiswick, and Regency have been so intermingled, concealed, and hidden by . . . Turner, Schuster, the Baskins, and McLaughlin, that they cannot be reached in any type of law action to satisfy the claims of the suppliers." Receivers are essential for Sinclair, Chiswick, and Regency "to prevent dissipation and concealment of assets." Several suppliers have attachments on real estate of Regency or Chiswick in actions against Sinclair, Regency or Chiswick.

The plaintiffs also stress that the building loan agreements with Provident require that "the Borrower . . . re-

ceive all advances hereunder as a trust fund to be applied first for the purpose of paying for the cost of the improvements before using any part of the total for any other purpose." They rely also on G. L. c. 266, § 38A, which imposes a criminal penalty for applying the proceeds of a building or construction loan to any use other than the "payment for labor and/or materials" before such payment is made.

The bill prays for an injunction against any disposition of the assets of Sinclair, Chiswick or Regency; that Mr. Roche be enjoined from paying out the sum held by him, that Provident be enjoined from making a new construction contract, that Chiswick and Regency be enjoined from disposing of their real estate, that the liability of the defendants other than Chiswick and Regency to make payment to suppliers be determined, and that the "assets of Sinclair, Chiswick, and Regency which may have been concealed, secreted, or otherwise improperly disposed of, be reached and applied in satisfaction of the claims of the plaintiffs and other suppliers of labor and material used in connection with the construction of said projects."

The appellants' brief informs us that a receiver was also appointed for Sinclair, but that it did not appeal.

We lay aside the contention that the suppliers are beneficiaries of the trust set up in the construction loan agreements in the sense that they may enforce the trusts. That the suppliers will benefit if the borrowers carry out their contractual and statutory obligations does not necessarily give them the standing in equity which they would have under instruments made primarily for their benefit. However, the existence of funds from which, if properly administered, payments may be made on account of the suppliers' claims, supports the appointment of receivers on the grounds hereafter noted.

There is a significant absence of direct allegations of community of interest or concert of action between Turner and Schuster on the one hand and the new owners of Chiswick and Regency on the other. Nevertheless, an opportunity for confusion of assets and bookkeeping is implicit

in Turner's initiation of the projects and his control of Sinclair, Chiswick, and Regency when organized and (with Schuster as to Chiswick and Regency) for a period thereafter.

We hold that the allegations that the plaintiffs have claims against Sinclair, that Sinclair's assets have been mingled with those of Chiswick and Regency and the assets of all three concealed, with the allegations of insolvency in the equity sense, added to the complexities inevitable when bonded construction projects being built with mortgage money falter in mid-course, justified the appointment of a receiver.

The creditors of Sinclair are entitled to have that corporation and the two corporations with whose affairs its affairs have become entangled managed with careful regard to the legal and equitable interests of all concerned. So managed, the payments to them may be substantially more than would otherwise be the case.

The requirement is met that the appointment of a receiver be incidental to affording other relief. *Richardson* v. *Clinton Wall Trunk Mfg. Co.* 181 Mass. 580, 583. *Mount Hope Finishing Co.* v. *Daylor,* 335 Mass. 84, 86–87. The relief here sought includes the untangling of the affairs of three insolvent corporations, and the establishment, and the enforcement for the benefit of Sinclair's creditors, of its rights against Chiswick and Regency.

There is no doubt of the jurisdiction of the court under its general equity powers to appoint receivers of a domestic corporation for the conservation of its assets and other appropriate purposes at the instance of a creditor. *New England Theatres, Inc.* v. *Olympia Theatres, Inc.* 287 Mass. 485, 491–493, and cases cited. (It is not necessary that the claim be reduced to judgment where the corporation did not object.) As to the right of stockholders, see *Hurley* v. *Boston R.R. Holding Co.* 315 Mass. 591, 616–617; *Mount Hope Finishing Co.* v. *Daylor,* 335 Mass. 84, 86–87. The plaintiffs are neither stockholders nor, directly, creditors, of Chiswick or Regency. But the application for the appointment of re-

ceivers for Sinclair, Chiswick and Regency, because of Sinclair's involvement with the other two, is somewhat analogous to a petition by Sinclair for appointment of receivers of the corporations directly indebted to it. Now that there is a receiver of Sinclair, which has not appealed, the analogy is strengthened.

It is not necessary nor would it be appropriate to disregard the corporate forms. See *Gardiner* v. *Treasurer & Recr. Gen.* 225 Mass. 355, 367; *Hanson* v. *Bradley,* 298 Mass. 371, 379–380; *W. W. Britton Inc.* v. *S. M. Hill Co.* 327 Mass. 335, 338–339; *Galdi* v. *Caribbean Sugar Co.* 327 Mass. 402, 407–408; and cases cited in each of the foregoing. But where there has been an intermingling of assets of three related corporations, and the need is shown for receivers to conserve and sort out their assets, the circumstance that the prime movers are not creditors of two of the corporations should not defeat the application.

Insolvency, coupled with mismanagement, so that there is danger that assets will be wasted or lost, supports the appointment of a receiver. Fletcher, Cyc. Corporations, § 7720, pp. 184–185. See *International Paper Co.* v. *Priscilla Co.* 281 Mass. 22, 25. In *Falmouth Natl. Bank* v. *Cape Cod Ship Canal Co.* 166 Mass. 550, 569, this court said "that the facts that a corporation is insolvent, that its affairs are in inextricable confusion, and that it has preferred certain creditors, [do not] necessarily require the appointment of a receiver." It does not follow, however, that it is error to appoint a receiver in such or similar circumstances.

This case we think, for the reasons already stated, is within the general intendment of the further statement in the *Cape Cod* case (pp. 568–569) as follows: "Generally, the appointment of a receiver rests in the sound discretion of the court. But in order to justify the appointment of one on the application of a creditor, it should at least appear that he has a valid claim against the corporation, that there are assets applicable to its payment, and that he has exhausted his legal remedies, or that the circumstances are such that to deny the application would lead to a wasting

and loss of property which otherwise might be made available for the payment of the debts of the corporation, and which could not be availed of in any other manner so satisfactorily as by the appointment of a receiver.''

The vital allegations of the bill, some on information and belief, are in such general terms as to suggest a reaching for grounds for relief beyond the true substance of the complex relationships. But there has been a hearing, an important purpose of which was to determine if there was sufficient substance underlying the allegations. Such a hearing gives adequate opportunity to protect against an unjustified attempt of suppliers, in a particular case, to obtain an advantage beyond that to which they are entitled under their contracts and the statutes as to liens and attachments.

*Decrees affirmed.*