Sherman *v.* Koufman.

CHARLOTTE K. SHERMAN, administratrix, *vs.* MANUEL M.
KOUFMAN
(and a companion case).

Norfolk.   October 6, 1965. — October 29, 1965.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Bills and Notes,* Validity, Consideration, Delivery.  *Evidence,* Extrinsic affecting writing.  *Release.   Fraud.*

Immediate consideration for a promissory note complete on its face and an absolute delivery thereof were shown where it appeared that upon delivery the payee paid the full amount of the note to the maker, even if the payee indicated that the money paid was an advance toward payment for expected services to be performed by the maker for the payee and that subsequently, upon performance thereof, the payee might relinquish the note.  [609–610]

Application of the parol evidence rule at the trial of an action against the maker of a promissory note precluded consideration of evidence that at the time of delivery of the note to the payee and payment of its amount by the payee to the maker, there had been an oral agreement that at some later date, in the event of performance of expected services for the payee by the maker, the payee might relinquish the note to the maker and thus apply the money paid for the note in satisfaction of the payee's liability to him for such services.  [610]

A general release under seal, without exceptions, given by the maker of a promissory note to the payee long after delivery of the note released any claims which the maker then had for performance of a promise by the payee not to enforce the note and to return it to the maker for cancellation and for breach by the payee of an alleged contract to make a payment to the maker in connection with a sale of real estate of the payee [610–611]; evidence of a statement by the payee just before execution of the release that "we will forget" the note and of vague talk about developing another parcel of the payee's real estate did not warrant a finding that the release had been induced by fraud [611].

BILL IN EQUITY filed in the Superior Court with a writ of summons and attachment dated March 15, 1962.

CONTRACT. Writ in the Superior Court dated March 15, 1962.

The cases were tried before *Ford, J.*

*Daniel F. Featherston, Jr.,* for the defendants.

*Claude B. Cross* (*John M. Reed* with him) for the plaintiff.

CUTTER, J. Idale L. Holm (Mrs. Holm) died on September 22, 1961. The plaintiff is her administratrix de bonis non with the will annexed.[1] One case is a bill in equity to reach and apply property of the defendant Koufman in satisfaction of a $9,000 note and a $20,000 check[2] drawn by him. The other is an action to recover on a $22,000 note, payable to Mrs. Holm or Esther G. Brenner,[3] of Legion Development Corporation (Legion) signed for Legion by Koufman, its president, treasurer, and sole stockholder. In the equity suit Koufman sought by declaration in set-off to assert a claim for alleged breach of contract. In each proceeding the answer admitted execution of the promissory note involved in that proceeding, denied that the note was a promissory note, alleged that the particular defendant (Koufman or Legion) had been discharged by "payment or satisfaction," asserted lack and failure of consideration, denied that the plaintiff was a holder in due course, asserted fraud in the inducement and execution of each instrument, and alleged that each instrument was "delivered for a special purpose only and upon conditions which were not performed." To the action against Legion there was no declaration in set-off.

The cases were consolidated and were tried together before a judge of the Superior Court and a jury. At the con-

---

[1] Mrs. Holm's executrix and sister, Esther G. Brenner, who has recently died, was the original plaintiff. The action at law was commenced on March 15, 1962. The equity suit was filed on April 3, 1962.

[2] Prior to trial, Koufman stipulated liability on the $20,000 check and that is no longer in issue.

[3] Esther G. Brenner waived any claim individually upon the $22,000 note and proceeded only as executrix.

clusion of the evidence, verdicts were directed for Mrs. Holm's executrix in the proceedings upon the two notes and upon the declaration in set-off. The outline bill of exceptions filed by Koufman and Legion and the defendants' appeal in the equity case present only the question of the propriety of the directed verdicts.[4]  The relevant facts are stated in their aspect most favorable to Koufman and Legion.

From her husband, who died in 1957, Mrs. Holm inherited property on Main Street, Hyannis. She was being pressed to sell this land for $260,000. Koufman, who met her after her husband's death, thought that a better price could be obtained. He testified that he proposed to her that she and he take over the property for $260,000 "and share in" any profit obtained on a fifty-fifty basis.[5]

The testimony about what then took place between Mrs. Holm and Koufman is prolix, vague, and confusing. We assume, without deciding, that this testimony, if believed, would have warranted a jury in finding that the following events occurred. Legion for its $22,000 note received funds deposited by Mrs. Holm at Koufman's direction in one of its bank accounts. Koufman himself received funds from Mrs. Holm for his $9,000 note. Probably she had herself borrowed part of the funds thus advanced by her. With respect to the $22,000 note, there was somewhat ambiguous testimony to the effect that the note was to be adjusted later in the event that deals with respect to the Hyannis properties eventuated. When Koufman sent to her the first interest due on that note, which had been set up as a liability on Legion's books, she refused to cash the check and Koufman testified that she said, "This will become part of the commission . . . from our deal." In June, 1959, when the

---

[4] The consolidated cases appear to have been treated for purposes of trial as if they had both been actions at law.

[5] Correspondence contemporary with this alleged arrangement does not reflect it. This and other evidence indicates that it was not discussed by Mrs. Holm with others, including her own attorney. The testimony about all dealings between Mrs. Holm and Koufman comes largely from Koufman himself.

$9,000 note was given, his evidence was that she "stated that she had some surplus cash . . . and she'd like to apply it the same way." She did not then tell Koufman that she had borrowed the money. We consider the case on the basis that Mrs. Holm, in some form of words, had indicated to Koufman that the funds given by her for the notes were an advance toward payment for Koufman's expected services in disposing of the Main Street property, made in a way which might be beneficial to Koufman from an income tax standpoint. He testified that he never reported the proceeds of either note as taxable income.

Eventually, the property was sold to one Poorvu and Koufman for $340,000. There was testimony in effect that Mrs. Holm urged Koufman to take $10,000 in cash at the closing toward a commission from her, "because you [Koufman] have already got the other money" and "we will forget the notes and . . . the checks." We assume, again without deciding, that the jury could have found that Mrs. Holm, at or before the closing, told Koufman that he could credit toward the purchase price to be paid to her $10,000 for his services in arranging the sale and that she would not enforce the $22,000 note and the $9,000 note.

At the closing, Koufman was represented by an attorney. Mrs. Holm's attorney insisted that Koufman give to her a very broad release under seal "from . . . any and all debts, obligations, claims . . . and demands which I now have or may have had . . . and more particularly on account of real estate . . . in Hyannis." This release was broad enough to include any then existing claim by Koufman to the cancellation or return of the two notes.

The evidence does not sustain the several defences to the two notes asserted by Koufman. The notes were complete promissory notes on their face. The undisputed evidence shows that by check Mrs. Holm at once advanced their full face value, as Koufman had directed. There was thus immediate consideration for the notes. Cf. *Salem Trust Co.* v. *Deery,* 289 Mass. 431, 434 (no consideration in inception of notes); *Quincy Trust Co.* v. *Woodbury,* 299 Mass. 565, 568. We perceive no basis in the evidence

for any contention that the execution of the notes was induced by fraud on the part of Mrs. Holm, nor does the evidence warrant the conclusion that there was a conditional delivery in the sense that the notes were not intended to take effect then, or at all, as negotiable instruments. At most the evidence would warrant finding an extremely vague oral agreement that at some later date Mrs. Holm might relinquish the notes, in effect thus applying the funds advanced against them in satisfaction of a liability to Koufman for a commission which might later come into existence. Such an agreement would not show conditional delivery or delivery for a special purpose, but would indicate an absolute delivery with an oral agreement for a possible conditional liability on the promise contained in the notes, dependent upon uncertain subsequent events. To show such an oral understanding would violate the substantive rule of law known as the parol evidence rule. *Dodge* v. *Bowen,* 264 Mass. 208, 212–213. See *Perkins* v. *Young,* 16 Gray, 389, 391–392; *Zielmann* v. *Copelof,* 232 Mass. 393, 396; *Trahant* v. *Perry,* 253 Mass. 486, 487–488; *Pelonsky* v. *Wattendorf,* 255 Mass. 558, 562; *Starks* v. *O'Hara,* 266 Mass. 310, 314. The parol evidence rule is not affected by the circumstance that incompetent parol testimony is introduced without objection. *Dekofski* v. *Leite,* 336 Mass. 127, 130.

The notes were never paid in money in accordance with their tenor and the plaintiff contends that an oral release of them by some informal agreement for services at the time of the closing, even if clearly established, would not extinguish the written notes. See G. L. c. 106, § 3–605. See also *Buswell* v. *Fuller,* 156 Mass. 309, 311; *Cardoza* v. *Leveroni,* 233 Mass. 310, 313. We need not reach this contention because, in appraising the evidence relied upon to support any such alleged oral release of the notes, the general written release given by Koufman to Mrs. Holm cannot be overlooked. It made no exceptions whatsoever. It did not contain a statement that it excluded any right of Koufman to have the two notes returned to him for cancellation. If Mrs. Holm had only that day (or previously) promised

to return the notes to him, that promise was a claim he then had against her, and thus it was necessarily included in the claims released by him under the general release. That release cannot, upon any facts here asserted, be varied by parol testimony. *Tupper* v. *Hancock,* 319 Mass. 105, 108. See *Willett* v. *Herrick,* 258 Mass. 585, 594–595; *Willett* v. *Webster,* 337 Mass. 98, 101–102. We find no evidential basis for a defence of accord and satisfaction or payment.

The general release disposes of the declaration in set-off for breach by Mrs. Holm of an alleged contract to pay to Koufman a stated sum or share of the proceeds of the sale of the Main Street, Hyannis, property. If Koufman had claims for such a breach against Mrs. Holm, he had them on the day he gave the general release. He was warned, as is shown by his own attorney's memorandum (contemporaneous with the release), "that the release was comprehensive and not limited to this property but he was satisfied to sign" it. Any suggestion that the release was induced by fraud, concealment, or misrepresentation is without merit. The evidence apparently relied upon as showing fraud by Mrs. Holm was her alleged conversation ("and we will forget the notes and the checks") at the time of the closing about applying the two notes against the commission or share of profits allegedly due to Koufman and some vague talk about developing another property on North Street, Hyannis. Such alleged statements seem to us at most to have been essentially promissory and not misrepresentations of an existing fact. See *Yerid* v. *Mason,* 341 Mass. 527, 529–531. See also *Saxon Theatre Corp.* v. *Sage,* 347 Mass. 662, 666–668. Cf. *Barrett Associates, Inc.* v. *Aronson,* 346 Mass. 150, 152. Indeed, if they were made, Koufman knew as much about them as Mrs. Holm did and, if he did not intend to release claims based upon them, he, before signing the release, should have requested from Mrs. Holm's attorney a modification of the general release.

In the action at law, the defendant's exceptions are overruled. The final decree in the equity case is affirmed, with costs of the appeal to the plaintiff.

*So ordered.*