WILLIAM C. BEARCE [1] *vs.* BROCKTON-EAST SHOPPING
PLAZA, INC.

Plymouth. October 7, 1971. — December 14, 1971.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Broker,* Commission. *Evidence,* Extrinsic affecting writing. *Contract,*
For broker's commission.

In an action wherein the plaintiff sought to recover commissions for
leases he negotiated while owner of property intended to be
developed as a shopping center, a provision of a contract between
him and the defendant for sale of the property to the defendant,
that if the plaintiff did not exercise an option given him by the
contract to repurchase the property within three years of the date
of the contract he would be paid "such commissions as would
normally be due . . . [him] for leases . . . [he] has, or will then have
negotiated in connection with the project," entitled him as a broker
to commissions from the defendant for all lease arrangements
made by him and resulting in a landlord-tenant relationship prior
to the expiration of the three year option, so that he was entitled to
recover the commissions sought in the action. |616-617|
A provision in a contract for payment of commissions "for leases . . .
negotiated" by a broker did not require executed documents. |618|

CONTRACT. Writ in the Superior Court dated January
14, 1969.

The action was heard by *Campbell, J.*

*Melvin S. Louison* for the defendant.

*Cortland A. Mathers* for the plaintiff.

CUTTER, J. Bearce in an action of contract seeks to re-
cover from the defendant (Brockton-East) commissions for
leases negotiated by him. A Superior Court judge, sitting
without a jury, found for the plaintiff on all counts. The

---

[1] The original plaintiff was William C. Bearce Agency, Inc. William C.
Bearce (Bearce), a licensed real estate broker, was added as a party plaintiff
by amendment. In his opening, counsel for the plaintiffs discontinued the
action so far as it concerned the corporate plaintiff.

case is here on an obscure outline bill of exceptions,[2] in which Brockton-East attempts to present an exception (not argued in Brockton-East's brief in any significant manner and, therefore, not considered by us; see S. J. C. Rule 1:13, 351 Mass. 738) to the admission of certain evidence and exceptions to the denial of certain of the defendant's requests for rulings. Although the judge made only a general finding, the evidence would have permitted him to find the facts stated below.

Bearce, engaged in real estate operations, intended to develop land in Brockton as a shopping center. He had "negotiated" four leases in connection with the proposed development prior to April 26, 1965, including one between himself as trustee of Oak Village Realty Trust (the Realty Trust) and Fernandes Super Markets, Inc. (Super Markets). Other leases were arranged with Dunnington's Pharmacies, Inc., Stengel's, Inc., and Anton's Highland Cleaners, Inc.[3] The negotiations with Super Markets were conducted by Bearce with Joseph Fernandes, its president and treasurer. The negotiations with Dunningtons' Pharmacies, Inc., Stengel's, Inc., and Anton's Highland Cleaners, Inc., involved discussions by Bearce with attorneys and others for the tenants and showing the properties to them. He was responsible for the original arrangements with each of these tenants.

On April 26, 1965, Bearce as trustee of the Realty Trust, agreed to sell to Brockton-East the land which had been

---

[2] The excepting party (Brockton-East) has not complied with S. J. C. Rule 1:22 (13), 351 Mass. 744, which requires it to file with, or as a part of, his brief "a record appendix reproducing such portions of the designated transcript as he deems necessary to his argument." This court need not (and normally will not) consider any part of the transcript not reproduced in a record appendix filed by a party. No party has filed any record appendix. The clerk of the full court has been instructed not to receive any briefs, in any case presented on an outline bill of exceptions, unless a record appendix has theretofore been filed reproducing all portions of the transcript of the evidence upon which the party filing the brief relies.

[3] On July 25, 1966, and October 1, 1967, respectively, Bearce negotiated leases with First County National Bank, and Hit or Miss, Inc. Brockton-East concedes that Bearce is entitled to commissions on these leases.

intended for use as a shopping center. The sale was subject to an option under which Bearce might repurchase the premises within three years (on terms which need not be recited). The agreement set forth that, "as a result of litigation [4] . . . [Bearce, as trustee] is unable to proceed and complete . . . construction . . . on . . . [the] premises." The final paragraph (par. 5) of the agreement reads (emphasis supplied): "In the event that the Seller [Bearce] does not for any reason exercise his option to repurchase . . . in or within . . . [three] years from the date of this agreement, the Buyer [Brockton-East] shall pay to the Seller the face amount of the within described note [a non-negotiable note given as part of the purchase price] together with interest at six percent . . . and in addition thereto *such commissions as would normally be due* the Seller for leases the Seller *has, or will then have negotiated* in connection with the project." Fernandes, as treasurer of Brockton-East,[5] executed this sale contract, at a time when the shopping center was about half completed and had not been occupied by any tenant. Because the repurchase option was not exercised within the three-year option period, Bearce now wishes to be paid (as broker and not as owner) commissions under par. 5 of the agreement of April 26, 1965, on the leases which he had arranged prior to that date with the four tenants, including Super Markets.[6]

1. The present controversy arises primarily from certain

---

[4] See e.g. *Bearce* v. *Zoning Bd. of Appeals of Brockton,* 351 Mass. 316.

[5] It could be found (a) that Fernandes then knew of the negotiations and arrangements with Super Markets and at least was aware of the existence of a lease or lease arrangement (made before April 26, 1965) with each of the other three lessees, and (b) that a lease commission schedule had been agreed to by Fernandes, in a letter of April 17, 1964, on the letterhead of Super Markets, signed by him as its president.

[6] Brockton-East places some reliance on evidence that Bearce had leased space for Brockton-East in other properties owned by that corporation, and that it had never paid a commission to Bearce on a lease of space in such other properties to Super Markets, an affiliated company. This seems of slight significance for Bearce had never performed any acts as broker with respect to such leases of other properties made between affiliated companies of each of which Fernandes was an officer.

language of par. 5 above, viz., "such commissions as would normally be due . . . for leases, the Seller [Bearce] has, or will then have negotiated." We are of opinion that, under this language (if it became effective by non-exercise of the option), Bearce was to receive (as a broker) commissions on leases or lease arrangements, arranged by him and resulting in a landlord-tenant relationship prior to the expiration of the option. He was to be paid such commissions whether his arrangements were (a) accomplished prior to the agreement of April 26, 1965, or (b) accomplished by him thereafter prior to the expiration of the three-year option period. This language does not seem to us to be ambiguous. Consequently there is no occasion for resort to the details of negotiations of the agreement to determine its meaning. See *Sherman* v. *Koufman,* 349 Mass. 606, 610; *Scirpo* v. *McMillan,* 355 Mass. 657, 661. If it had been Fernandes's intention to pay no commission on the Super Markets' lease, he should have excluded it from the comprehensive language of par. 5. See analogy of *Schuster* v. *Baskin,* 354 Mass. 137, 140–141.

2. The judge properly denied each of Brockton-East's requested rulings set out in part in the margin.[7] The necessity of giving each of them depends in large measure on our interpretation of par. 5 of the agreement.

On that interpretation of par. 5 it could not have been ruled (see fn. 7, requests nos. 1 and 2) that the evidence did not warrant a finding for Bearce. Request no. 3 could not have been allowed since it was inconsistent with facts obviously found by the judge. The evidence permitted the judge to conclude that Bearce had done much more than

---

[7] These requests were: "1. . . . [A] finding for . . . [Bearce] is not warranted, except for the Hit or Miss and the First County National Bank Lease. 2. . . . [Bearce] may not recover a commission for any lease on the premises occupied by . . . Super Markets . . . . 3. Recovery may not be had . . . between parties for merely introducing tenants to . . . [Brockton-East]. 4. The words 'negotiate' and 'lease' must be used in their commonly accepted sense and require an executed document in order to be deemed a negotiated lease between . . . [Brockton-East] and any given tenant."

"merely introducing tenants to" Brockton-East and, indeed, had arranged the substantial provisions of each of the four leases, including that to Super Markets. Request no. 4 also could not have been allowed. It overstated the extent of activity by a broker which ordinarily would entitle him to receive a commission (see e. g. *Spence* v. *Lawrence,* 337 Mass. 355, 358; *Lucier* v. *Young,* 338 Mass. 671, 672–673) for arranging a lease or becoming its effective cause. See e.g. *Henderson & Beal, Inc.* v. *Saitz,* 327 Mass. 523, 524–525. The negotiation of a landlord-tenant relationship, reasonably (and in common practice) called a "lease," indeed does not invariably require "an executed document." See *Commonwealth* v. *Goldberg,* 319 Mass. 7, 8. See also *Crowe* v. *Bixby,* 237 Mass. 249, 251–252, 254.

*Exceptions overruled.*