van Gestel, Allan, J.
This matter comes before the Court on two motions for summary judgment. The plaintiff, the Massachusetts Insurers Insolvency Fund (the “Fund”), has filed a motion for partial summary judgment, and the defendant Safety Insurance Company (“Safety”) has moved for summary judgment on the claims against it.

BACKGROUND

On December 10, 1998, the defendant Lynne M. Cignarella (“Lynne”) was a passenger in an automobile owned and opemted by her husband, Peter A. Cingarella (“Peter”), which was involved in a collision with a vehicle operated by the defendant Erica Folkard (“Erica”) and owned by her father, the defendant Carl Hughes (“Hughes”).
Safety insured the Cignarella vehicle with both bodily injury and uninsured motorist (“UM”) limits of $25,000.
Trust Insurance Company (‘Trust”) insured the Hughes vehicle with a policy providing bodily injury limits of $100,000.
Lynne filed suit against her husband, Peter, and against Erica and Hughes, in Plymouth Superior Court seeking damages for personal injuries sustained in the accident. This case was remanded to the Hingham District Court (the “Hingham suit”).
Lynne’s attorney in the Hingham suit, and in all related matters thereafter was Martha L. Morrill (“Ms. Morrill”).
Peter, Lynne’s husband, was defended in the Hingham suit by Christine A. Bock (“Ms. Bock”), an attorney provided by Safety.
On November 11, 2002, a Safety claims adjustor made an unsolicited telephone call to Ms. Morrill and stated that Safety would offer the full bodily injury policy limit of $25,000 to settle the case. Ms. Morrill had not previously made a demand for settlement to Safety.
Also on November 11, 2002, Ms. Bock telephoned Ms. Morrill regarding the execution of a release (the “Release”), releasing Peter and Safety. The Release, which was drafted by Ms. Morrill, Lynne’s attorney, was executed by Lynne on December 3, 2002, and her signature was notarized by Ms. Morrill. The Release reads as follows:
RELEASE AND SETTLEMENT OF CLAIM FOR THE SOLE CONSIDERATION OF TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), I do hereby release, acquit and forever discharge Safety Insurance, Peter A. Cignarella, driver of vehicle, and Peter A. Cignarella, owner of vehicle, from any and all actions, causes of action, claims and demands, damages, costs, loss of services, expenses and compensation on account of or in any way growing out of any and all known and unknown personal injuries and property damage resulting or to result from an accident that occurred on December 8, 1998, and do hereby agree to indemnify and save harmless the said Safety Insurance and Peter A. Cignarella from all further claims or demands, costs or expense arising out of injuries or damage sustained by me.
It is expressly warranted by me that no promise or inducement has been offered except as herein set forth; that this release is executed without reliance upon any statement or representation of the person or parties released, or their representatives, concerning the nature and extent of the injuries, damages and/or legal liabilities therefore (sic); that acceptance of the consideration set forth herein is in full accord and satisfaction of a disputed claim for which liability is expressly denied.
Signed and sealed this 3rd day of December 2002.
On December 11, 2002, a motion for separate and final judgment pursuant to Mass.R.Civ.P. Rule 54(b) was assented to by Ms. Morrill, filed and allowed by the Hingham District Court. On December 17, 2002, a stipulation of dismissal was executed by all counsel and filed in the Hingham District Court, effectively ending Lynne’s litigation against Peter.
On December 23, 2002, the settlement check was endorsed by Ms. Morrill and her client, Lynne, and negotiated for payment.
Over two years before the Release was executed by Lynne, Trust, which insured Erica and Hughes, was determined to be insolvent by the Supreme Judicial *522 Court on July 26, 2000, effective August 2, 2000. As provided in G.L.c. 175D, by reason of the insolvency of Trust, the Fund became obligated to pay certain “covered claims” arising out of and within the coverage of certain Trust insurance policies. The Trust policy in issue here provided coverage for bodily injury for which Erica and Hughes were legally responsible. The limits of the bodily injury protection under the Trust policy are $100,000.
Following completion of the settlement and litigation against Peter in the Hingham suit, a demand was made on behalf of Lynne against Trust for the $100,000 bodily injury limits covering the Hughes vehicle. Because of Trust’s insolvency this demand was denied. Lynne then made demand for UM coverage against the Fund. The Fund responded to Lynne’s demand by stating that she first was required to exhaust all other available insurance resources before being able to access funds from the Fund. Lynne then made her UM demand against Safety.
Safety’s response to Lynne’s demand was to cite to the Release and deny the claim.
The Fund initiated this case to have the rights and obligations of the various parties declared by the Court.
The depositions of the two attorneys involved with the Release have been deferred pending the resolution of the Fund’s motion. The Fund contends, however, that it did not agree to defer these two depositions pending Safety’s motion. As a result, the Fund has responded to Safety’s motion with a Rule 56(f) request for discovery.
In support of its Rule 56(f) request, the Fund states that it “believes that the depositions will reveal facts that the parties did not intend the Release to apply to Ms. Cignarella’s UM claim.” “The Fund also intends to inquire at such depositions whether Safety failed to comply with certain obligations to Ms. Cignarella set forth in G.L.c. 176D, including without limitation the obligation to inform Ms. Cignarella of the applicable coverages arising out of the Accident and the provisions of the policy under which benefits were paid.”

DISCUSSION

Summary judgment is granted where there are no issues of genuine material fact, and the moving parly is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 283 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Here, of course, both the Fund and Safety are moving parties.

The Fund’s Motion.

The Fund’s summary judgment motion seeks a judicial declaration that the Fund is entitled to deduct from any amount that may be due from it to Lynne on her UM claim $25,000, that being the amount that may be due from Safety, or would have been due but for the Release.
Safety’s motion takes the position that the Release is a complete bar to any further payments to Lynne from Safety.
The Court begins its analysis by examining the statutory powers granted to the Fund by G.L.c. 175D, sec. 5(1) (a) and (b):
(1) The Fund shall:
(a) be obligated to the extent of the covered claims against the insolvent insurer existing prior to the declaration of insolvency and arising within sixty days after the declaration of insolvency . . . but such obligation shall include only that amount of each covered claim which ... is less than three hundred thousand dollars.
(b) be deemed the insurer to the extent of its obligations on the covered claims and shall have all rights, duties and obligations of the insolvent insurer to such extent; . . .
The definition of a “covered claim” in sec. 1 of c. 175D is: “an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer and (a) the claimant or insured is a resident of the commonwealth; or (b) the property from which the claim arises is presently located in the commonwealth. ”
Statutory interpretation presents a question of law for the Court to decide. Annese Elec. Services, Inc. v. City of Newton, 431 Mass. 763, 767 (2000). In so doing, the primary duly of a judge is to give effect to the Legislature’s intent. Pielech v. Massasoit Greyhound, Inc., 423 Mass. 534, 539 (1996); Callan v. Winters, 404 Mass. 198, 202 (1989); Sterilite Corp. v. Continental Gas. Co., 397 Mass. 837, 839 (1986). The legislative intent must be ascertained from all of a statute’s words, construed by ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished. Acting Superintendent of Bournewood Hospital v. Baker, 431 Mass. 101, 104 (2000); Bombardieri v. Registrar of Motor Vehicles, 426 Mass. 371,374 (1998).
In determining the legislative intent behind a particular provision, the Court may also look to relevant provisions in other parts of the statute. Hartford Ins. Co. v. Hertz Corp., 410 Mass. 279, 283-84 (1991). Also, the Court ought to apply the plain language used in the statute when that language is unambiguous. ROPT Ltd. Partnership v. Katin, 431 Mass. 601, 603 (2000); *523 Crenshaw v. Macklin, 430 Mass. 633, 634 (2000); Commissioner of Revenue v. Cargill., Inc., 429 Mass. 79, 82 (1999). Sound judgment and common sense must be applied so as to make a statute an effectual piece of legislation. Sun Oil Co. v. Director of Division of Necessaries of Life, 340 Mass. 235, 238 (1960).
The Fund itself is a
“statutorily mandated, nonprofit, unincorporated association of all insurers writing certain kinds of direct insurance in the Commonwealth . . . available to settle certain unpaid claims which arise out of and are within the coverage of an insurance policy issued by an insolvent insurer.” Commissioner of Ins. v. Massachusetts Insurers Insolvency Fund, 373 Mass. 798, 799 (1977). The [Fund] is, in essence, simply a conduit to which certain non-insolvent insurers, authorized to do business in the Commonwealth, pay a pro rata amount to enable the [Fund] to pay “covered claims” to insureds whose insurance companies become insolvent subsequent to the issuance of their policies and claims. G.L.c. 175D. The nature of the transaction and the activity engaged in is the payment of “covered claims,” and transactions are motivated by legislative mandate, not business or personal reasons.
Barrett v. Massachusetts Insurers Insolvency Fund, 412 Mass. 774, 776-77 (1992).
Thus, the Fund is not an insurer, as such.
The Fund is “obligated to the extent of the covered claims.” The “covered claims” are claims “which arise[ ] out of and [are] within the coverage of an insurance policy” of an insolvent insurer.
Further G.L.c. 175D, sec. 9 provides as follows:
Any person having a claim against his insurer under any insolvency provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant’s insurance policy.
Because Lynne had a claim under the insolvency provision of the Safety policy, triggered by the Trust insolvency, which insured the Hughes vehicle, she was required — as she attempted to do — to exhaust her right to UM coverage. Thus, under sec. 9, the amount payable by the Fund here on the Trust policy should be reduced thereby. That amount is $25,000. See Vokey v. Massachusetts Insurers Insolvency Fund, 381 Mass. 386, 390 (1980).

Safety’s Motion

The focus then shifts to Safety. Must it provide $25,000 worth of UM coverage to Lynne or have all of its obligations been terminated by the Release?
The central issue in this summary judgment motion is a mixed question of law and fact: whether any of the injuries alleged by the Leblancs fall outside the scope of the .. . release discharging Dr. Friedman’s liability. Because the interpretation of a contract is a question of law for the courts ... and releases are a form of contract . . . the question has a legal element: What acts does the release cover? If there are facts material to this mixed question in dispute, summary judgment cannot be granted.
Leblanc v. Friedman, 438 Mass. 592, 596-97 (2003).
The Release here is similar in some respects, and dissimilar in other respects, from that in Leblanc. It is similar in that it releases Safety “from any and all actions, causes of action, claims and demands, damages, costs, loss of services, expenses and compensation on account of or in any way growing out of any and all known and unknown personal injuries and property damage resulting or to result from an accident that occurred on December 8, 1998.” (Emphasis added.) Also, the Release contains the following representation by Lynne: She does “hereby agree to indemnify and save harmless the said Safety Insurance of all further claims or demands, costs or expense arising out of injuries or damage sustained by [her].”
The Release is dissimilar from that in Leblanc in that in Leblanc the release was presented by the insurance carrier and was executed by the Leblancs “who were unrepresented by an attorney.” Id. at 599, n.6. Here, Lynne was represented by counsel, was a plaintiff in a suit brought by that counsel, and Lynne’s counsel drafted the Release and notarized her client’s signature thereon. Further, after the execution of the Release, Lynne’s counsel participated in the entry of judgment dismissing all claims against Safety’s insured.
Another dissimilarity, although perhaps of not great moment, is that in Leblanc the releasors received veiy little — $7,000 — for the release. Here, Lynne received the full bodily injury policy limits — albeit only $25,000 — for the Release of Peter and Safely.
As stated in Leblanc,
The intentions of the parties . . . are not ... in dispute . . . [T]he release signed by the Leblancs contained a provision discharging the four parties from liability for injuries both “known and unknown” at the time of signing, and specifically recited their intention that the release includes “injuries currently existing but unknown to either or both of the parties.” Because the release provided for such coverage, the subjective beliefs of the parties as to whether the release covered unknown injuries is thus irrelevant.
Id. at 597.
Similarly here, the Release drafted by her counsel and signed by Lynne released all claims “on account of or in any way growing out of any and all known and unknown personal injuries and property damages resulting or to result from an accident on December 8, 1998.” Further, Lynne’s release contained the ad *524 ditional language indemnifying and saving harmless Safety “from all further claims or demands, costs or expense arising out of injuries or damage sustained by” her.
Thus, the subjective beliefs of Lynne and her counsel are irrelevant here. For that reason, the fact that her counsel’s deposition has not been taken does not present a reason to grant the Fund’s Rule 56(f) request and not decide Safety’s motion.
Examining the language of the Release discussed above, and the express warranty by Lynne “that no promise or inducement has been offered except as [t]herein set forth; that this release is executed without reliance upon any statement or representation of the person or parties released, or their representatives, concerning the nature and extent of the injuries, damages and/or legal liabilities therefore [sic]; [and] that acceptance of the consideration set forth herein is in full accord and satisfaction of a disputed claim for which liability is expressly denied,” this Court determines that the Release is a general release. As such, it is “to be given effect, even if the parties _did not have in mind all the wrongs which existed at the time of the release.” Id. at 597-98 (quoting from Schuster v. Baskin, 354 Mass. 137, 140 (1968)).
Among the “known and unknown personal injuries and property damages resulting or to result from an accident on December 8, 1998,” were the bodily injuries to Lynne included within the UM coverage provided in Part 3 of the Safety policy. “All [of Lynne’s] claims against [Safely] are therefore discharged.” Leblanc, supra 438 Mass. at 602. Lynne, because of her Release, is no longer able to press her UM claim against Safety.

ORDER

For the foregoing reasons, the Plaintiff Massachusetts Insurers Insolvency Fund’s Motion for Partial Summary Judgment, Paper #13, and the Motion of the Defendant, Safety Insurance Company, for Summary Judgment, Paper #18, are each ALLOWED.
A judgment shall enter in favor of the Massachusetts Insurers Insolvency Fund declaring that:
The Fund is entitled to reduce the amount payable on a covered claim of Lynne M. Cignarella, if any, by the $25,000 UM limits of the Safety Insurance Company policy issued to Peter A. Cignarella.
A judgment shall enter in favor of Safety Insurance Company dismissing any claims against it in this action and declaring that:
The Release of Lynne M. Cignarella, dated December 3, 2002, includes any claims by her against Safety Insurance Company, including claims for UM coverage, resulting from an accident in which she was involved that occurred on December 8, 1998.
The parties are requested to confer and then report to the Court as to what, if anything, remains to be litigated in this matter.